(No. 62137.—

FAMILY LIFE LEAGUE *et al.*, Appellants, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Appellees.

*Opinion filed May 21, 1986.*

SIMON, J., took no part.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks and Roma Jones-Stewart, Solicitors General, and Barbara L. Yong and James C. O'Connell, Special Assistant Attorneys General, of Chicago, of counsel), for appellee Department of Public Aid *et al.*

Calvin Sawyier and James L. Fletcher, of Winston & Strawn, of Chicago, for appellee Illinois State Medical Society.

Dennis J. Horan, Victor G. Rosenblum, Edward R. Grant, Maura K. Quinlan and Clarke D. Forsythe, of Chicago, for *amicus curiae* Americans United for Life Legal Defense Fund.

Alan S. Gilbert, of Sonnenschein, Carlin, Nath & Rosenthal, and Colleen K. Connell, all of Chicago, for *amicus curiae* Roger Baldwin Foundation of ACLU, Inc.

CHIEF JUSTICE CLARK delivered the opinion of the court:

Does the State Records Act (Ill. Rev. Stat. 1979, ch.

116, par. 43.4 *et seq.*) require the disclosure of the names of providers of abortion services, the number of abortions performed, and the amounts paid for those services under the Medicaid program?

This is the question we are presented with in this appeal. The Family Life League and certain of its members and officers (the plaintiffs) brought an action for *mandamus* seeking to require the Illinois Department of Public Aid to provide a list of physicians, hospitals, and other service providers (the providers) who have furnished abortion services under the Illinois Medicaid program to recipients from 1978 to the present. The plaintiffs also sought to determine the number of abortions performed and the amounts of money received by the providers for such services. Plaintiffs claim entitlement to the information pursuant to the State Records Act (the Act) (Ill. Rev. Stat. 1979, ch. 116, par. 43.4 *et seq*).

The Department of Public Aid and its director (the defendants) maintain that nothing in the Act requires them to create a "special abortion" list as requested by the plaintiffs. In addition, the defendants allege that providing such information would cause "the unwarranted invasion of the providers' and recipients' rights to privacy."

Upon plaintiffs' motion for a judgment on the pleadings, the circuit court of Cook County ordered the defendants to make available, at plaintiffs' expense, a list of providers under the Medicaid program who performed abortion services for recipients. However, the circuit court denied the plaintiffs access to the information on the numbers of abortions performed and the amounts of money received by each provider.

Plaintiffs appealed to the appellate court and the defendants cross-appealed, at which time the Illinois State Medical Society was granted leave to intervene as a cross-appellant. In addition, the Roger Baldwin Foun-

dation of the American Civil Liberties Union (ACLU), Inc., was granted leave to file a brief *amicus curiae*. The majority of the appellate court reversed and remanded to the circuit court, finding that disclosure of the information requested by the plaintiffs would invade the recipients' constitutional right of privacy to make and effectuate their abortion decisions. (132 Ill. App. 3d 929, 933.) The plaintiffs filed the current appeal before this court, at which time the Americans United for Life Legal Defense Fund was allowed to file a brief *amicus curiae*.

The plaintiffs relied in particular upon the following provisions of the Act, which are cited here in pertinent part:

"Reports and records of the obligation, receipt and use of public funds of the State are public records available for inspection by the public." Ill. Rev. Stat. 1979, ch. 116, par. 43.6.

"Any person shall have the right of access to any public records of the expenditure or receipt of public funds *** for the purpose of obtaining copies of the same or of making photographs of the same." Ill. Rev. Stat. 1979, ch. 116, par. 43.7.

The defendants, while admitting they are subject to the Act, raise four arguments as to why the records in question should not be disclosed:

(1) Making the records available would directly infringe upon the recipients' right of privacy.

(2) Making the records available would have an inhibiting effect on the number of providers willing to participate in the Medicaid abortion program, thus indirectly infringing on the recipients' right of privacy.

(3) Making the records available would invade upon the providers' right of privacy.

(4) The disclosure of the information sought would require the creation of a "new record" by the defendants.

We believe that none of these arguments set forth by the

defendants are legally sufficient to prevent disclosure.

The Act does contain a general privacy exemption:

> "Nothing in this section shall require the State to invade or assist in the invasion of any person's right to privacy." Ill. Rev. Stat. 1979, ch. 116, par. 43.6.

The defendants initially argue that the disclosure of the information would *directly* invade the recipients' right of privacy. Such an argument is impotent. The plaintiffs have requested disclosure of information which concerns the identity of the providers. The plaintiffs have *not* requested any information concerning the identity of recipients. This court shares the defendants' concern for the protection of the recipients' privacy; however, we do not believe that disclosure of the information sought would have any direct impact on the recipients' right of privacy.

The defendants then seem to alter the thrust of their argument by arguing that such disclosure would at least *indirectly* invade the recipients' right of privacy. The defendants base their premise on the theory that by divulging this information concerning the providers "it might have an inhibiting effect on the number of providers willing to participate" in the Medicaid abortion program, and they argue that this result will violate the holding in *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705.

In *Roe v. Wade,* the Supreme Court first recognized a fundamental constitutional right of privacy which encompasses a woman's decision of whether to terminate her pregnancy. That right of privacy guaranteed by the penumbra of the Bill of Rights of the United States Constitution was also secured by the drafters of the 1970 Constitution of the State of Illinois. Ill. Const. 1970, art. I, secs. 6, 12.

The Supreme Court has also noted that because abortion is a medical procedure requiring the advice and as-

sistance of medical personnel, a woman, to fully vindicate her fundamental rights, needs to have available to her a physician who is free to exercise his best medical judgment. See *City of Akron v. Akron Center for Reproductive Health, Inc.* (1983), 462 U.S. 416, 76 L. Ed. 2d 687, 103 S. Ct. 2481.

The defendants reason that disclosure of the names of providers of abortion services would subject those physicians to the pressure of special interest groups. This would, in turn, result in fewer physicians willing to perform Medicaid abortions, thus adversely affecting a woman's need to have available to her a physician. This contention was erroneously supported by the appellate court majority, which stated:

> "[I]f physicians are unable or unwilling to perform legal abortions for welfare recipients because of arbitrary outside restraints, welfare recipients would not be able to give effect to their constitutional right of privacy to obtain an abortion within the ambit of *Roe v. Wade.*" 132 Ill. App. 3d 929, 932.

In support of this premise, the appellate court appended a series of news reports concerning violent attacks on abortion clinics. The appellate court stated:

> "In our present social climate of dangerous emotional highs on both sides of the abortion issue, it can hardly be denied that the insidious threat of harassment and harm to physicians performing legal abortions and the terrorism of abortion clinics by antiabortion vigilante groups are very real. Given these circumstances, it is reasonable to conclude that physicians would simply be unwilling to be a part of the abortion decisions of women on welfare if there is compelled disclosure of the information sought by plaintiffs." 132 Ill. App. 3d 929, 932.

Such an analysis makes two unfounded assumptions: first, that the plaintiffs are a vigilante assemblage, and, second, that terrorist acts will result from disclosure of the information sought. These assumptions are not in

any way supported by the record.

The facts of the case are that the Act provides that records of the use of public funds are public records available for inspection. It does not require that the persons requesting the information explain their need for that information or their planned use of the information. The Act seeks to achieve a highly desirable goal; namely, that the public knows how its tax dollars are being spent.

In addition, the feared harassment is highly improbable. In Illinois, the *only* type of abortions performed under the Medicaid abortion program are restricted to those instances where, "in the opinion of the physician, such procedures are necessary for the preservation of the life of the woman seeking such treatment" (Ill. Rev. Stat., 1984 Supp., ch. 23, par. 5—5(17)). Abortions performed under such circumstances are the least likely to provoke public controversy, and therefore physicians who perform such abortions would be the least likely to be harassed.

It would be inappropriate for a court to assume that, when given access to certain information, the public will react in a tortious or criminal manner. There are certainly sufficient legal avenues available to combat criminal and tortious acts. The denial of the People's right to public information is not one of them.

The "harassment assumption" is not supported in any way in the record. Therefore, it cannot and will not be assumed by this court that the release of public-expenditure information to the plaintiffs would arbitrarily restrain either the practice of physicians performing the welfare abortions or consequently the recipients' right of privacy either directly or indirectly.

The next argument the defendants raise is that disclosure of this information would invade the providers' right of privacy. The defendants assert that "disclosure

of the Medicaid recipients will undoubtedly subject them to threats and harassment in the performance of their profession, as well as their private lives, and thereby constitute an invasion of their right to privacy."

This assertion, which was summarily rejected by the appellate court, is pure speculation. There is no evidence in the record to demonstrate that the plaintiffs or anyone else would utilize the information in any unlawful manner or that any physician would be dissuaded from performing Medicaid abortions as a result of disclosure. Contrary to the defendants' contention, the notoriety of providers which furnish abortion services is already well established through advertisements in telephone directories, brochures, newspapers and magazines.

It should be noted that the receipt of State funds by physicians creates a public interest in the physicians' activities regarding the use of those funds. (See *Mid-America Television Co. v. Peoria Housing Authority* (1981), 93 Ill. App. 3d 314.) The physicians, as licensed professionals providing public services at the taxpayers' expense, at best have a limited privacy interest in this information, and the physicians' interest is decidedly outweighed by the public's interest.

The defendants' last attempt to prevent disclosure is to argue that the information sought would require the creation of a "new record." It is undisputed that the records containing the information sought are kept by the defendants. They contend, however, that the only records ordinarily made and kept by them contain additional information which is confidential and may not be disclosed (*i.e.*, recipients' names). Defendants claim that they have no duty to produce a record which omits confidential information, since this would constitute the creation of an entirely new record.

This interpretation of the Act is at odds with the spirit and intent of the Act. We concur with the appel-

late court's statement that the acceptance of this interpretation would effectively gut the Act. The purpose of the Act is to open the State's books to the light of public scrutiny. That purpose would be totally thwarted if an entire record could be kept closed simply by inserting some minute confidential information, particularly when the confidential information can be deleted as in the case at bar.

Two supreme courts of sister States have been presented with the precise issue before this court, and both have held that disclosure of the names of physicians who receive public funds for abortion services does not infringe upon any right of privacy. *State ex rel. Stephan v. Harder* (1982), 230 Kan. 573, 641 P.2d 366; *Minnesota Medical Association v. State* (Minn. 1978), 274 N.W.2d 84.

In *Harder*, the plaintiff was a member of an antiabortion group which requested the disclosure of the names of physicians and the amounts of public funds paid to each for abortions performed during a given time period. The court specifically addressed the issues of whether disclosure "[would] impair a physician's right to personal privacy, and whether such disclosure [would] infringe a patient's privacy-protected right to make a personal decision to obtain an abortion." 230 Kan. 573, 585, 641 P.2d 366, 375-76.

The *Harder* court rejected, as "highly speculative," the arguments that disclosure of the doctors' names would either deter women from seeking abortions or cause some physicians to discontinue participation in the Medicaid program. (230 Kan. 573, 586, 641 P.2d 366, 376.) The court held that "the public's right to know how and for what purposes public funds are spent is a matter of legitimate public concern, far outweighing any personal privacy right of those providers to whom public funds are disbursed." 230 Kan. 573, 586-87, 641 P.2d

366, 376.

In *Minnesota Medical Association v. State* (Minn. 1978), 274 N.W.2d 84, a newspaper reporter requested a list of all providers that had performed abortions for medical-assistance patients and the amounts the State had paid to each provider. The court, in finding that there would not be any infringement on privacy rights, reasoned that "it seems unlikely that mere disclosure of the fact that a doctor has performed abortions will cause him to stop providing that service. Once that fact is known, the doctor has little reason to stop. In fact, disclosure could aid women seeking abortions to find a doctor willing to provide the service." (274 N.W.2d 84, 92.) The court concluded:

"Disclosure places no burden on the doctor, does not destroy the confidentiality of his relationship with patients, and does not restrict his freedom to exercise his medical judgment. Disclosure itself does not have any effect on the moral or ethical considerations that affect his decision whether or not to perform abortions." 274 N.W.2d 84, 92.

We find these opinions persuasive and well reasoned, and we agree with the conclusions reached by both courts.

The defendants contend that in order to delete the confidential information, a special computer program will have to be developed. We therefore hold that, on remand, the circuit court should set a reasonable amount of time for the defendants to prepare the program and to furnish the requested information, which shall include the names of providers of abortion services, the number of abortions performed, and the amounts paid for those services under the Medicaid program from 1978 to the present. We do not wish to interfere with the defendants' ability to perform their services or place on them an onerous burden. We also hold, and the plaintiffs agree, that the plaintiffs shall have to pay the reasonable

cost of exercising their rights.

Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed insofar as it required that a list of providers of Medicaid abortions be made available at plaintiffs' expense and reversed insofar as it denied access to the information on the numbers of abortions performed and the amounts of money received by each provider. The cause is remanded to the circuit court of Cook County for entry of an order consistent with this opinion.

*Appellate court reversed;*
*circuit court affirmed in part*
*and reversed in part; cause*
*remanded, with directions.*

JUSTICE SIMON took no part in the consideration or decision of this case.