CHERYL BOWIE *et al.*, Plaintiffs-Appellants, v. EVANSTON COMMUNITY CONSOLIDATED SCHOOL DISTRICT 65 *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 87—0580

Opinion filed March 16, 1988.

David T. Erie, of Chicago, for appellant.

John A. Relias, Lawrence J. Casazza, and Charles P. Rose, all of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiffs, Cheryl Bowie, James Roberts, and Vanessa Gray, appeal the dismissal of their complaint by the circuit court of Cook County. Plaintiffs' complaint for declaratory and injunctive relief under the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*) sought access to standardized California Achievement Test score records for students in certain grades and schools within defendant school district and a list of educational programs available in those schools.

Defendants maintain the subject records in the form of a "Report of Test Results" for each school year, school, and grade within each school. The reports contain each student's name, sex, race, and his or her raw score and percentile rank in 11 testing categories on the standardized California Achievement Test. Each report also contains the total and average test scores by school, grade, race and sex for the categories of "Total Students," "Total Black Boys," "Total Black Girls," "Total Other Boys" and "Total Other Girls." The sex and race of each student is represented by a digit from 1 to 10, each digit standing for a separate sex and race combination. For instance, the digit 1 stands for White Male, the digit 4 for Black Female, and the

digit 9 for Hispanic Male. This digit appears in a vertical column with the heading "S/R" immediately after a vertical column listing the name of each student and immediately before 11 vertical columns in which each student's performance is detailed so that the name, sex, race and performance of each student is shown on the same horizontal line.

Defendant Evanston Community Consolidated School District 65 (school district), through defendant Eugene Mulcahy, its superintendent, denied plaintiffs' request for the subject records on the ground that they were exempt from disclosure under section 7 of the Freedom of Information Act. Section 7 provides, *inter alia*:

"The following shall be exempt from inspection and copying:

(a) Information specifically prohibited from disclosure by Federal or State law or rules and regulations adopted pursuant thereto.

(b) Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless such disclosure is consented to in writing by the individual subjects of such information." (Ill. Rev. Stat. 1985, ch. 116, par. 207.)

Defendant Mulcahy claimed that section 6(a)(8) of the Illinois School Student Records Act prohibited the disclosure of the subject records without the written consent of the parents of the students concerned. (Ill. Rev. Stat. 1985, ch. 122, par. 50—6.) Defendants did supply plaintiffs certain information regarding the various educational programs conducted in the school district and claimed that it was all the information on such programs available.

Subsequent to plaintiffs' information requests, defendants publicly released a status report summarizing the 1985-86 student performance on the standardized California Achievement Test by district, school and race. The report contained the national percentile rank equivalents of average test scores for black and nonblack students in grades 1 through 5, 7 and 8 and the percentages of black and nonblack students in those grades in the highest and lowest quartiles on various subjects tested on the California Achievement Test.

Plaintiffs' complaint alleged that defendants refused to supply the requested information without legal basis. Defendants moved for dismissal of the complaint under section 2—619(a)(9) of the Civil Practice Law. That section provides for the dismissal of an action because the claim asserted is barred by affirmative matter, other than that listed in subparagraphs 1 through 8, which defeats, or avoids the legal effect of, the claim asserted. (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)). The trial court granted the motion as to plaintiffs' request

for the standardized test scores because it believed that plaintiffs had received "sufficient information" of the test scores through defendants' release of the report containing average test scores for black and nonblack students. It also concluded that disclosure of the test scores would constitute an invasion of the privacy rights of the students whose test scores were the subject of plaintiffs' request. Finally, the trial court concluded that defendants may not have supplied plaintiffs with sufficient information of the educational programs conducted in defendants' schools and thus ordered them to give plaintiffs any supplemental information in their possession. The trial court dismissed plaintiffs' complaint with prejudice.

OPINION

Initially, we must determine whether plaintiffs' request for "scrambled," *i.e.*, alphabetically jumbled, records was properly before the trial court and is properly before this court. Plaintiffs' complaint alleged they had repeatedly expressed a "willingness to accept masked records [*i.e.*, with students' names deleted] to protect the confidentiality of individual data." Plaintiffs' complaint prayed for, *inter alia*, an order requiring defendants to produce the requested documents and "such further relief as the [c]ourt deems just and reasonable." Defendants assert that plaintiffs' failure to request scrambling of the subject records in their complaint renders that request tardy and not properly before this court.

It has been held that, although a complaint prays for general relief, facts must be alleged which warrant the relief granted. (*Failing v. Failing* (1954), 4 Ill. 2d 11, 15, 122 N.E.2d 167.) It would seem, under this rule, that plaintiffs had alleged facts warranting the trial court, were it ultimately to have found for plaintiffs, to order defendants to produce the subject records in a masked format only. Given that defendants maintain the subject records alphabetically by students' names, the necessity of scrambling the records to protect the students' privacy is manifest. It would also seem, therefore, that the trial court properly dismissed the complaint inasmuch as masking of the students' names would be inadequate to protect the students' privacy.

■■■ However, we believe there are other factors countervailing the rule that a complaint must allege facts warranting the relief granted. The first is the rule of section 2—603(c) of the Civil Practice Law that pleadings are to be "liberally construed with a view to doing substantial justice between the parties." (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c).) The second is the rule of section 2—612(b) of the Civil

Practice Law that "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim" against him. We also note, without basing our decision thereon, that section 2—612(c) provides that all defects in pleadings, in form or substance, not objected to in the trial court, are waived. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—612(b), (c).) Applying these rules to plaintiffs' complaint, we believe that it sufficiently informed defendants of the nature of plaintiffs' claim to permit the trial court, if it had ultimately ruled for plaintiffs, to order defendants to produce the subject records in a scrambled, as well as masked, format. As such, plaintiffs' failure to express a willingness to accept the requested records in a scrambled, as well as masked, format before filing suit and, thus, to allege that willingness in their complaint does not preclude them from asserting on appeal that scrambling *and* masking of the records would have protected the privacy of the students whose records they sought.

We next consider whether the trial court properly dismissed the complaint. Plaintiffs contend the trial court erred in ruling that disclosure of the subject records would violate the privacy of the students concerned because the records are not school student records under section 2(d) of the Illinois School Student Records Act (School Records Act). That section provides, *inter alia*:

> " 'School Student Record' means any writing or other recorded information concerning a student and by which a student may be individually identified ***." (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(d).)

Specifically, they assert that masking and scrambling of the information in the records which allows the identification of individual students removes them from the ambit of section 2(d) of the School Records Act. As such, they assert, the parental consent requirement of section 6(a)(8) of the Act for release of such records (Ill. Rev. Stat. 1985, ch. 122, par. 50—6(a)(8)) is inapplicable here. Plaintiffs cite, in support, *Human Rights Authority of the State of Illinois Guardianship & Advocacy Comm'n v. Miller* (1984), 124 Ill. App. 3d 701, 464 N.E.2d 833, which held that masked student educational program records of a school district do not fall within the Act's definition of school student records.

Defendants note that the records, requested for specific grades and schools, contain, in alphabetical order, the name, sex, race, raw score and percentile rank of each student in 11 testing categories. Masking, *i.e.*, deleting the students' names, alone, they reason, would not prevent identification of individual students inasmuch as a list of stu-

dents could be obtained, arranged alphabetically by school and grade and matched to the records. Because masking alone would be inadequate, *Miller* is distinguishable, they conclude. Masking and scrambling would also be inadequate, they assert, because the records are coded for sex and race. They reason that, as any specific sex and race group would be identifiable, individual identification of students is so likely that parental consent to release the records is required under the School Records Act.

■ We do not believe the Freedom of Information Act allows a public body to refuse production of records or documents in its possession merely because they contain several items of information other than that sought which, if not masked, *i.e.*, deleted, would allow the identification of the individuals to whom those records pertain and, thus, the invasion of their privacy. In this case, that information is the name, sex and race of the students whose records plaintiffs requested. We believe that "masking" of the information to prevent the identification of individual students includes, not only the deletion of the students' names, but the deletion of their sexes as well. Deletion of students' names and sexes and the scrambling of the alphabetical order of their scores would make their identification virtually impossible, notwithstanding the disclosure of their race. Moreover, *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449, 493 N.E.2d 1054, establishes defendants' duty to mask all information other than that requested which would allow the identification of students.

*Family Life League* was an action under the State Records Act. (Ill. Rev. Stat. 1979, ch. 116, par. 43.4 *et seq.*) That act applies to all records prepared or received by State agencies prior to July 1, 1984, while the Freedom of Information Act applies to records and reports prepared or received on or after that date. (Ill. Rev. Stat. 1985, ch. 116, par. 43.29.) The plaintiffs in *Family Life League* sought, *inter alia*, a list of providers of abortions under the Illinois Medicaid program from the Illinois Department of Public Aid. The Department contended, *inter alia*, that the only records it kept contained confidential information, *i.e.*, the names of abortion recipients, which it could not disclose, as well as the information the plaintiffs sought, and that it had no duty to create a new record omitting such information. The court rejected these arguments, stating:

> "This interpretation of the Act is at odds with the spirit and intent of the Act. *** The purpose of the Act is to open the State's books to the light of public scrutiny. That purpose would be totally thwarted if an entire record could be kept

closed simply by inserting some minute confidential information, particularly when the confidential information can be deleted as in the case at bar." *Family Life League*, 112 Ill. 2d at 457-58.

■ Defendants distinguish *Family Life League* on the grounds that the confidential information in the records here is not minute, was not inserted in them merely to keep the records closed and deletion and scrambling of the students' names would not protect their privacy rights. These arguments are unavailing. Defendants' refusal to delete the confidential information facilitating the identification of individual students, *i.e.*, their names *and* sex, if upheld, would defeat the purposes of the Freedom of Information Act (see Ill. Rev. Stat. 1985, ch. 116, par. 201) as effectively as the refusal to delete the abortion recipients' names in *Family Life League* would have defeated the purpose of the State Records Act. Moreover, in comparison to the substance of the subject records, the students' names and sexes are minute items of information. The subject records, properly masked and scrambled, are not exempt from disclosure under the Freedom of Information Act. Accord *Kryston v. Board of Education* (1980), 77 A.D.2d 896, 430 N.Y.S.2d 688; *Western Services, Inc. v. Sargent School District No. RE—33J* (Colo. App. 1986), 719 P.2d 355.

In *Kryston*, the New York Supreme Court, Appellate Division, held that the disclosure of standardized test scores maintained in alphabetical order would constitute an unwarranted invasion of personal privacy, a violation of the New York Freedom of Information Law, given that only 75 students were involved. The court also held, however, that the scrambling of the test scores would not constitute the preparation of a " 'record not possessed or maintained' " by the respondent, the preparation of such records not being required under the statute. (*Cf.* Ill. Rev. Stat. 1985, ch. 116, par. 201 (the Freedom of Information Act is not intended to create an obligation on the part of any public body to prepare or maintain any public record not maintained or prepared at the time the Act becomes effective).) It also held that any doubt on that issue would be resolved in the petitioner's favor, since public disclosure statutes are liberally construed to permit maximum access to documents. Finally, the court reasoned that disclosure of the test scores in a scrambled and masked format would protect the students' privacy, provide the records sought, and impose no onerous burden on the respondents. *Kryston*, 77 A.D.2d at 897, 430 N.Y.S.2d at 689-90.

Defendants' reliance on their coding of the subject records by sex and race to distinguish *Kryston* is, as previously noted, unavailing.

Also unavailing to them is the *Kryston* court's finding that masking alone was insufficient to protect the students' privacy given their small number. As previously noted, plaintiff's here have, as the petitioner in *Kryston* had, a right to scrambled, as well as masked, records.

Moreover, *Western Services, Inc.* and section 8 of the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 208) resolve the situation where the coding of the records, specifically for race, does make individual student identification likely due to a small number of students of a given race in a class.

*Western Services* held that the defendant school district had a duty under the Colorado public records act to mask and scramble standardized student test records and to code them to reflect the students' Hispanic or Anglo origin. It also held that "the record[s] so structured do[ ] not constitute the 'creation' of a new public record." (*Western Services*, 719 P.2d at 358.) Finally, the court held that if the small number of students of Hispanic or Anglo origin in a class made their identification likely despite masking and scrambling of the records, the school district could obtain a court order restricting disclosure.

■ The Freedom of Information Act achieves the same result as *Western Services*. Section 8 thereof provides that if any public record exempt from disclosure under section 7 of the Act contains any nonexempt material, the exempt material shall be separated and the nonexempt material disclosed. (Ill. Rev. Stat. 1985, ch. 116, par. 208.) Thus, contrary to defendants' argument, the subject records are not exempt from disclosure in their entirety merely because there may be so few students of one race and sex in a class as to make their identification likely. Rather, if masking and scrambling of the subject records does not prevent a likely identification of such students, defendants must separate the records exempted for that reason and disclose the remaining records. Finally, the determination of the parameters for establishing when such identification is likely is a matter for the trial court upon remand.

■ Plaintiffs next contend the trial court erred in holding that the report containing average test scores for black and nonblack students sufficiently informed them of the requested information to satisfy their request. Specifically, they assert courts have no discretion under the Freedom of Information Act to determine that the release of information other than that requested is a sufficient substitute. Rather, they argue, as Federal courts have held under the Federal Freedom of Information Act, unless the information sought falls

within an express statutory exemption, a court must order its production. (*Wine Hobby, USA, Inc. v. United States Bureau of Alcohol, Tobacco & Firearms* (E.D. Pa. 1973), 363 F. Supp. 231, *rev'd on other grounds* (3d Cir. 1974), 502 F.2d 133; *Kalmin v. Department of Navy* (D.C. 1985), 605 F. Supp. 1492.) We agree and in so doing note that defendants do not respond to this argument.

■ Lastly, plaintiffs contend the trial court erred in dismissing their request for information of the educational programs offered in defendants' schools without allowing discovery or an evidentiary hearing on the issue. Plaintiffs claim the trial court dismissed this portion of their complaint on the basis of defendant Mulcahy's affidavit, claiming that he had responded fully to that request. The record reveals otherwise. On this aspect of the case, the court ruled:

> "I also think that [there] may be an issue as to whether or not you have supplied to the Plaintiffs *** the sufficient records of the educational programs, and to that extent, I will allow you to give any supplemental information that you have, or I will direct you to give any supplemental information that you have, and supply them forthwith to the plaintiffs.
>
> Other than that, the case will be dismissed. That will be my order."

Clearly, plaintiffs obtained an order directing defendants to make full disclosure of any information concerning educational programs in their possession. The court having so ordered, it need not have allowed plaintiffs discovery or an evidentiary hearing on the issue. If plaintiffs believe that defendants have not complied with the trial court's order, they may seek appropriate relief in the trial court but cannot appeal therefrom. See *Moenning v. Illinois Bell Telephone Co.* (1985), 139 Ill. App. 3d 521, 487 N.E.2d 980 (appellant can appeal only from decisions adverse to him and cannot appeal from judgments in his favor).

■ Finally, we must address defendants' remaining arguments in support of the trial court's order. Disclosure of the subject records is not required, they first assert, because they contain confidential information "inextricably intertwined" with nonconfidential information and deletion of the former will produce a document with little informational value or will not prevent an invasion of privacy. (*Neufeld v. Internal Revenue Service* (D.C. Cir. 1981), 646 F.2d 661; *Andrews v. Veterans Administration of the United States* (Wyo. 1985), 613 F. Supp. 1404.) They repeat that disclosure of the records will result in identification of students because of the small number of students in each class and the sex/race coding of the records. Moreover, they as-

sert, removal of that code would render the records meaningless to plaintiffs given their desire to compare the scores of students of different races in Evanston schools.

*Andrews*, the only case defendants cite which applied the "inextricably intertwined" rule, is distinguishable. The confidential information at issue therein was contained in proficiency reports on nurses employed by the Veterans Administration. The reports contained a series of numerical ratings in various areas of job performance and a narrative discussion of each nurse's job performance. The court found that it would be a "simple procedure" to delete from the numerical ratings portion of each report any information identifying the subject in order to prevent an invasion of privacy. However, the court found that the identifying information in the narrative portion of the reports "would normally be so inextricably intertwined with other materials that segregation is not reasonably possible, and it should be expected that release of any meaningful part of this portion *** will enable identification of the subject and will result in an invasion of *** privacy." (*Andrews*, 613 F. Supp. at 1411.) We find the name and sex information here more like the information in the numerical ratings portion of the records at issue in *Andrews* than the "inextricably intertwined" information in the narrative portion of those records.

We conclude that, in the format in which defendants maintain the subject records, the students' names are not inextricably intertwined with their races or the other information to which plaintiffs are entitled. Moreover, that the sex and race of each student are combined and represented by one digit does not render the latter "inextricably" intertwined with the former. Rather, the sex of each student may be deleted by deleting the digit code and the race may be maintained by substituting a simpler code, such as "W" for white students, "B" for black students, and "O" for other students. The deletion of students' names and sexes would thus not render the records worthless to plaintiffs or result in an invasion of privacy.

■ Defendants next assert that plaintiffs' request for scrambled test score records is unduly burdensome in that defendants will have to expend valuable labor and computer time to change thousands of entries in order to scramble the records. As such, they assert that they are not required to comply with plaintiffs' request under section 3(f) of the Freedom of Information Act. That section provides:

"Requests calling for all records falling within a category shall be complied with unless compliance *** would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body out-

weighs the public interest in the information. Before invoking this exemption, the public body shall extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions." (Ill. Rev. Stat. 1985, ch. 116, par. 203(f).)

Defendants note that defendant Mulcahy met with plaintiffs in an attempt to resolve their differences over masked test records and was unable to do so. As a consequence, they assert, plaintiffs' request was not reduced to manageable proportions.

We do not agree that defendants' compliance with plaintiffs' request would be unduly burdensome. Specifically, that defendants will have to expend valuable labor and computer time to comply with plaintiffs' request does not impose a burden on defendants outweighing the public interest in the information. In this regard, we note that in *Family Life League* the fact that a special computer program was required to delete the confidential information from the records at issue did not alter the court's conclusion. (*Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449, 459, 493 N.E.2d 1054.) Our conclusion notwithstanding, however, we will remand this cause to the trial court for a determination under section 6(b) of the Freedom of Information Act whether plaintiffs are entitled to a waiver or reduction of defendants' reproduction fees on the ground that furnishing the information primarily benefits the general public. Ill. Rev. Stat. 1985, ch. 116, par. 206(b).

Defendants lastly contend that section 1 of the Freedom of Information Act justifies their denial of plaintiff's request. Section 1 states, *inter alia*: "This Act is not intended to create an obligation on the part of any public body to maintain or prepare any public record *** not maintained or prepared *** when this Act becomes effective ***." (Ill. Rev. Stat. 1985, ch. 116, par. 201.) *Family Life League, Kryston,* and *Western Services* establish that masking the names and sexes of the students and scrambling the alphabetical order of the subject records does not constitute the creation of new records.

For all of the foregoing reasons, the order of the circuit court of Cook County dismissing plaintiffs' complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WHITE, P.J., and RIZZI, J., concur.