(No. 67171.— ▮▮▮▮▮▮▮▮▮▮▮

CHERYL BOWIE *et al.*, Appellees, v. EVANSTON COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 65 *et al.*, Appellants.

*Opinion filed April 20, 1989.*

John A. Relias, Lawrence J. Casazza and Charles P. Rose, of Chicago (Vedder, Price, Kaufman & Kammholz, of counsel), for appellants.

David T. Erie, of Chicago, for appellees.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, Cheryl Bowie, James Roberts and Vanessa Gray, filed suit for declaratory judgment and injunctive relief in the circuit court of Cook County against defend-

ants, Evanston Community Consolidated School District No. 65 (district) and Eugene Mulcahy, the district superintendent (superintendent), pursuant to the Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*).

Plaintiffs, parents of students attending the district's schools, sought the disclosure of standardized California Achievement Test (test) scores for students from certain years, grades and schools within the district and a list of education programs available in those schools. The trial court granted defendants' motion to dismiss the complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2— 619(a)(9)). Plaintiffs appealed and the appellate court reversed and remanded, finding that the district had a "duty to mask [*i.e.*, delete] all information other than that requested which would allow the identification of the students." (168 Ill. App. 3d 101, 107.) This court allowed defendants' petition for leave to appeal under Rule 315 (107 Ill. 2d R. 315).

The issue to be determined is whether masked and scrambled test score records, which do not identify individual students, are subject to disclosure under the FOIA.

On February 21, 1986, plaintiffs submitted a FOIA request to the district. Plaintiffs sought test score information of students from 1982 through 1986 school years for second, third and fifth grade students in eight elementary schools, for sixth and eighth grade students in three middle schools, and for second, third, fifth, sixth and eighth grade students in an experimental school. The test scores were requested for 11 testing categories (*e.g.*, reading, spelling, language, mathematics, etc.) and were to designate the race of the students tested. The names or sex of the students were not requested. A list of the educational programs available at the schools was also requested.

Then-superintendent Dr. Robert Campbell denied the request on March 4, 1986, asserting the privacy protections of the FOIA and the Illinois School Student Records Act (Act) (Ill. Rev. Stat. 1985, ch. 122, par. 50—1 *et seq.*). Plaintiffs appealed this denial to Dr. Mulcahy, the new superintendent of schools. The superintendent denied the appeal on July 3, 1986. The superintendent later met with plaintiffs and their attorney and said he would try to release the test scores by school and race. However, the superintendent did not disclose the information despite further requests by the plaintiffs.

Plaintiffs filed their complaint in the circuit court of Cook County on August 22, 1986. On September 22, 1986, the district released to the public a 46-page report summarizing the 1985-86 students' performance on the test by school, grade and race, but not the individual scores of the students. The district then filed a motion to dismiss the complaint arguing that the test scores requested in the complaint were exempt from disclosure under sections 7(a) and (b) of the FOIA (Ill. Rev. Stat. 1985, ch. 116, par. 207(a)(b)), and that even if the requested data were masked and scrambled, disclosure was prohibited under the Act, which, in part, protects the privacy rights of students. Ill. Rev. Stat. 1985, ch. 122, par. 50—1 *et seq.*

The trial court granted defendants' motion to dismiss, relying on two grounds: (1) production of the test scores would violate the students' privacy rights, and (2) the district's release of the September 22, 1986, status report supplied plaintiffs with "sufficient information" to satisfy their FOIA request. On appeal, the appellate court reversed.

The district asserts two reasons why it should not be required to produce the requested information in a masked and scrambled format: the information is exempt from disclosure under the Act, as well as the FOIA, and

to produce the information would require it to "create a new, non-exempt record from an otherwise exempt record." The district also contends that, should we affirm the decision of the appellate court, the case should be remanded to the trial court for a determination of whether compliance with the plaintiffs' request would be "unduly burdensome." Plaintiffs argue that the appellate court did not err in holding that neither the Act nor the FOIA prohibits the disclosure of the test score information in a masked and scrambled format. Plaintiffs also assert that the release of the information would not result in the creation of a new record and compliance by the district would not be "unduly burdensome."

The purpose of the FOIA is to open governmental records to the light of public scrutiny. (Ill. Rev. Stat. 1985, ch. 116, par. 201 *et seq.*; see also, *e.g.*, *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449 (interpreting the Illinois State Records Act).) Freedom of information fosters governmental accountability and an informed citizenry.

The public policy of this State encourages a free flow and disclosure of information between government and the people. The FOIA is to be given a liberal construction to achieve this goal. (Ill. Rev. Stat. 1985, ch. 116, par. 201.) There is a presumption that public records are open and accessible. (Ill. Rev. Stat. 1985, ch. 116, par. 211(e).) The flow of information, however, is not left unchanneled. Among other concerns, the court must be vigilant against invasions of privacy and interfering with the functions of government by imposing reporting requirements not otherwise authorized, but exceptions to disclosure are to be read narrowly. Ill. Rev. Stat. 1985, ch. 116, par. 201.

The requested test score information is subject to the Act, and we are thus presented with the provisions of the FOIA and its interplay with the Act. The Act defines

"school student record" to mean any writing or other recorded information concerning a student by which a student may be individually identified. (Ill. Rev. Stat. 1985, ch. 122, par. 50—2(d).) Under the Act, access to a school student record is limited and, unless a person qualifies for its release under one of several exceptions, access will be denied. Ill. Rev. Stat. 1985, ch. 122, par. 50—6.

The district argues that there is a conflict between the broad disclosure guarantees of the FOIA and the Act's limitations on disclosure. The district claims that it need not disclose the test score information. To do so, it argues, would run afoul of the Act because the requested records contain individual student identifying information. Plaintiffs argue that the production of masked and scrambled test records will not invade student privacy interests.

We agree with the plaintiffs. The Act prohibits the disclosure of a school student record whereby a student may be individually identified. A masked record, which deletes individual identifying information, does not fall within the definition of a school student record, and is not prohibited from disclosure under the Act. (*Human Rights Authority of the State of Illinois Guardianship & Advocacy Comm'n v. Miller* (1984), 124 Ill. App. 3d 701, 704. See also *Kryston v. Board of Education, East Ramapo Central School District* (1980), 77 A.D.2d 896, 896-97, 430 N.Y.S.2d 688, 689.) Accordingly, the requested records may be disclosed under the Act.

Nonetheless, the district contends that if the legislature intended that individual student records be released after redacting individual identifying information it would have so provided; because it did not, the Act should not be read to allow disclosure of any part of a school student record without parental consent.

We find this contention to be without merit. Section 6(a)(4) of the Act, for example, provides access to school student records to any person for the purpose of re-

search, statistical reporting or planning, provided that no student or parent can be identified from the information released. (Ill. Rev. Stat. 1985, ch. 122, par. 50—6(a)(4).) No parental consent is required.

The district also asserts that the requested data, even if masked and scrambled, are exempt under sections 7(a) and (b) of the FOIA (Ill. Rev. Stat. 1985, ch. 116, pars. 207(a), (b)). Section 7(a) applies to information specifically prohibited from disclosure under another law. Section 7(b) prevents the disclosure of information which would result in a clearly unwarranted invasion of personal privacy.

As already noted, the Act does not prohibit the disclosure of a masked and scrambled record. The district asserts no other statutory or regulatory bar to the disclosure of a masked and scrambled record. Consequently, we find that the section 7(a) exemption does not apply in this case.

The district next argues that the requested records, under section 7(b), contain exempt information which if disclosed would constitute an unwarranted invasion of privacy and, therefore, it need not disclose the records. Under section 8 of the FOIA, a public body, such as the district, that maintains a record with both exempt and nonexempt data must separate the exempt matter and disclose the nonexempt record. (Ill. Rev. Stat. 1985, ch. 116, par. 208.) The mere presence or commingling of exempt material does not prevent the district from releasing the nonexempt portion of the record.

The district keeps the test records using a single digit sex/race code. The district asserts that release of the records using the sex/race code would result in the potential identification of students and an unwarranted invasion of their privacy. Yet, the district in its brief concedes that the students' privacy can be protected by "recodifying" the scores to assure that only race, and not both the sex and race of each student, is released.

Plaintiffs sought the test score data on the basis of race alone; they did not ask for names or a sex-based distribution of scores. Under these circumstances, we find that the disclosure of the requested data in a masked and scrambled format would not violate the FOIA.

The district has already taken a step in this direction. Following the institution of this suit, the district publicly released a 46-page report which, although not disclosing the individual test scores, disclosed the scores by school, grade and race. The names and sex code were deleted from the report.

In releasing the report, the district recognized the public's "right to know" and duty to "monitor" governmental performance, as well as the general concern for disclosure. (Ill. Rev. Stat. 1985, ch. 116, par. 201.) Moreover, the district recognizes that the requirement for public disclosure can, in this case, be balanced with the privacy interests of the students. (Ill. Rev. Stat. 1985, ch. 116, par. 201. See also, *e.g., Environmental Protection Agency v. Mink* (1973), 410 U.S. 73, 80, 35 L. Ed. 2d 119, 128, 93 S. Ct. 827, 832-33.) The district concedes that it can protect the privacy of the students. Too, plaintiffs agree that if there is a likelihood that a student will be identified, then that record should not be disclosed. Accordingly, where, as here, individual identifying information can be redacted and the record scrambled, preventing a clearly unwarranted invasion of personal privacy, the record must be disclosed. Ill. Rev. Stat. 1985, ch. 116, pars. 201, 207, 208; see also, *e.g., Department of the Air Force v. Rose* (1976), 425 U.S. 352, 373-77, 48 L. Ed. 2d 11, 28-30, 96 S. Ct. 1592, 1604-07; *Kryston v. Board of Education, East Ramapo Central School District* (1980), 77 A.D.2d 896, 896-97, 430 N.Y.S.2d 688, 689.

The district, however, argues that it is under no duty to delete the sex portion of its code and produce a record using only a race code. A similar argument was made to and

rejected by the court in *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449, 457-58. *Family Life* involved a suit for the disclosure of abortion providers under the Illinois State Records Act (Ill. Rev. Stat. 1985, ch. 116, par. 43.4 *et seq.*). Like the district here, the Department argued that because the record sought contained confidential information it was exempt from disclosure. The court stated that "accept[ing] this interpretation would effectively gut the [State Records] Act. The purpose of the Act is to open the State's books to the light of public scrutiny. That purpose would be totally thwarted if an entire record could be kept closed simply by inserting minute confidential information, particularly when the confidential information can be deleted as in the case at bar." (*Family Life*, 112 Ill. 2d at 457-58.) The logic of *Family Life* is equally compelling in the FOIA context. See, *e.g.*, Ill. Rev. Stat. 1985, ch. 116, par. 208.

The district next asserts that to make it produce a masked and scrambled record would be tantamount to forcing it to create a new record. The plaintiffs argue that the masking and scrambling of the test score record would not constitute the creation of a new record.

We agree with the plaintiffs. The district is not being required to prepare a "new" record. Deleting information from a record does not create a "new" record, even if all but one or two items of information have been deleted. (*Family Life*, 112 Ill. 2d at 457-58. See also *Yeager v. Drug Enforcement Administration* (D.C. Cir. 1982), 678 F.2d 315, 321.) Similarly, scrambling a record does not lead to the creation of a "new" record. (*Kryston*, 77 A.D.2d at 897, 430 N.Y.S.2d at 689-90; *Seigle v. Barry* (Fla. App. 1982), 422 So. 2d 63, 66-67.) The district is only being required to delete the exempt matter, protecting the students' privacy, and disclose the nonexempt portion of the record. Ill. Rev. Stat. 1985, ch. 116, par. 208.

The district contends, however, that this result is an overly broad reading of the FOIA, and cites to *Sargent School District No. RE—33J v. Western Services, Inc.* (Colo. 1988), 751 P.2d 56, *rev'g* (Colo. App. 1986), 719 P.2d 355, as support for this contention. We find *Sargent* to be inapposite. The *Sargent* court acknowledged that the Colorado Open Records Act differs from most other States' public records acts in that the record custodian is under no duty to delete exempt materials from an otherwise disclosable record. (*Sargent*, 751 P.2d at 60-61.) That, however, is not the law in Illinois. Ill. Rev. Stat. 1985, ch. 116, pars. 201, 208.

Because there is no evidence in the record regarding whether the district's compliance with the plaintiffs' FOIA request would be "unduly burdensome" (Ill. Rev. Stat. 1985, ch. 116, par. 203(f)) or whether there are so few students of one race in a class that disclosure of the test records would result in their identification (Ill. Rev. Stat. 1985, ch. 116, par. 207(b)), the cause must be remanded to the trial court for it to make those determinations (Ill. Rev. Stat. 1985, ch. 116, par. 211(e)).

For the foregoing reasons, the judgment of the appellate court, reversing and remanding the cause to the circuit court, is affirmed.

*Judgment affirmed.*

JUSTICE WARD took no part in the consideration or decision of this case.

JUSTICE MILLER, dissenting:

I believe that by initially misframing the issue before the court, the majority reaches the wrong result in this case. I therefore respectfully dissent.

Plaintiffs sought the standardized achievement test scores of students in certain grades of certain schools in the defendant school district. Plaintiffs requested that,

for each test score listed, the race of the student be designated. The school district maintains records that include this information. There is a single report for each grade and school in the school district containing an alphabetical list of the students' names, the test scores of each student in 11 different categories and a race/sex code for each student. The race/sex codes describe with a single digit both the race and sex of the students. White males are represented by a "1"; white females by a "2"; black males by a "3"; and so forth through the spectrum of race and, in some cases, national origin.

The manner in which the school district records the information sought by the plaintiffs makes the identification of an individual student's score possible in three ways. First, the inclusion of every student's name obviously enables whoever reads the report to identify individual student's test scores. Second, because the scores appear in alphabetical order by the students' names, it would be possible to correlate the test scores with a class list even if the report did not include the students' names. Third, in certain cases, the number of students of a particular race and sex may be so small in a given grade and school that identification of individual student's scores would be possible through the race/sex codes.

Both parties agree that, because individual student's test scores are identifiable, the district's records, in their present form, are exempt from disclosure under section 7(b) of the Freedom of Information Act (FOIA) (Ill. Rev. Stat. 1985, ch. 116, par. 207(b)). This section provides that information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy is exempt from inspection and copying unless the subjects of the information consent to its disclosure. The parties further agree that, to protect the students' privacy and at the same time provide the plaintiffs with the information

requested, the student names would have to be deleted (masked), the order of the scores randomly rearranged (scrambled) and the current race/sex codes replaced with race-only codes (recodified). The substitution of the race/sex codes with codes designating only the race of the students would increase the number of students within any one classification and make the identification of individual students less likely.

At the time this action commenced, section 8 of the FOIA (Ill. Rev. Stat. 1985, ch. 116, par. 208) imposed a duty on public bodies to separate exempt material from nonexempt material. Section 8 then provided: "If any public record that is exempt from disclosure under Section 7 of this Act contains any material which is not exempt, the public body shall separate the exempt material and make the nonexempt material available for inspection." Plaintiffs contend, and defendants concede, that in this case the school district has an obligation to mask the students' names and scramble their scores.

The parties disagree, however, on whether any duty exists on the defendants' part to substitute the race/sex codes used in the reports with a new race-only code and by that action render the records subject to the disclosure requirements of the FOIA. Thus, unlike the majority, I do not believe that the issue in this case is "whether masked and scrambled test score records, which do not identify individual students, are subject to disclosure under the FOIA." I believe rather that the issue here is whether the FOIA requires a public body to recodify exempt records in order to make them nonexempt.

Plaintiffs suggest three reasons why the school district is, or should be, required to replace the current codes with more general, race-only codes. Initially, plaintiffs contend, and the majority seems to agree, that our decision in *Family Life League v. Department of Public*

*Aid* (1986), 112 Ill. 2d 449, compels this substitution. To the extent that our opinion in *Family Life League,* which interpreted the State Records Act (Ill. Rev. Stat. 1979, ch. 116, par. 43.4 *et seq.*), offers guidance in the interpretation of the FOIA, it should be noted that in *Family Life League* we concluded only that the public body was required to delete, not to substitute, information in order to render the records exempt.

Moreover, following the appellate court's opinion in this case, the legislature amended section 8 of the FOIA. As presently written, section 8 no longer requires public bodies "to separate" exempt and nonexempt material but instead requires that public bodies *"delete* the information which is exempt [under section 7] and make the remaining information available for inspection and copying." (Emphasis added.) (Pub. Act 85–1357, eff. Jan. 1, 1989 (amending Ill. Rev. Stat. 1987, ch. 116, par. 208).) As plaintiffs concede, more than deletion is involved in this case. Their reliance on *Family Life League* is therefore misplaced, and I find no support in either the present or former language of the FOIA to favor their contention that the school district was obligated to replace the codes it had chosen and utilized.

Plaintiffs next contend that the purpose of the FOIA is to open the books of government to public scrutiny and that this purpose will be undermined if defendants are not required to alter their records to permit disclosure. Yet, as the FOIA itself recognizes, the public's right to information is not without limits. For example, section 1 states that the act is not intended to create an obligation on the part of any public body to maintain or prepare new records. (Ill. Rev. Stat. 1987, ch. 116, par. 201.) Similarly, section 7 creates 28 separate exemptions from the act's provisions. (Ill. Rev. Stat. 1987, ch. 116, pars. 207(a) through (cc).) Thus the act represents the legislature's balancing of the public's interest in disclo-

sure against other competing private and governmental interests. Section 8 reflects the legislature's determination concerning the extent to which a public body must modify exempt records to render them nonexempt. Because I do not read that provision to impose a duty on public bodies to recodify existing records, the balancing features of the act are best served by recognizing that the school has no obligation to recodify its records to provide the information in the form requested by plaintiffs.

Finally, plaintiffs contend that the failure to recognize a duty to recodify existing records ignores the capabilities of modern data processing. I do not find this argument persuasive. I see nothing in the FOIA which indicates that the legislature intended to impose a duty on public bodies to use their computer capabilities to provide information in a form that would make the material nonexempt. (See *Yeager v. Drug Enforcement Administration* (D.C. Cir. 1982), 678 F.2d 315 (interpreting Federal FOIA).) The act simply does not differentiate between records stored in computers and those maintained manually.

Nor am I convinced that such a distinction would be advisable. The recognition of a greater duty to modify exempt information that is stored in computers than that which is stored manually would essentially mean that public records maintained by computers would be subject to broader disclosure requirements than manually kept records. Thus a distinction between computer and manually maintained records may create an incentive in public bodies to record certain types of information in computer form and other types in manual form depending on how desirable its disclosure to the public may be perceived. I do not believe that such incentives are in the public interest.

Having concluded that the defendants are not and should not be required to replace existing codes with new ones in order to make exempt records nonexempt, I believe the majority unnecessarily considered the remaining arguments raised by the defendants. I would reverse the appellate court's judgment.

JUSTICE RYAN joins in this dissent.