THE CITY OF MONMOUTH, Plaintiff-Appellant and Cross-Appellee, v. THE GALESBURG PRINTING AND PUBLISHING COMPANY, d/b/a The Register Mail, *et al.*, Defendants-Appellees and Cross-Appellants.

Third District   No. 3—85—0515

Opinion filed June 17, 1986.

Ronald C. Tenold, of Standard & Tenold, of Monmouth, for appellant.

Richard L. Thies and Mark A. Durmmond, both of Webber & Thies, P.C., of Urbana, for appellees.

JUSTICE BARRY delivered the opinion of the court:

The city of Monmouth appeals from the dismissal of its complaint for declaratory judgment and injunction against a Galesburg newspaper and one of its reporters in a dispute over the disclosure of the names, ages, and addresses of the victims of crimes occurring within the city. Defendants cross-appeal from that part of the dismissal order which held that section 7(b)(v) of the Freedom of Information Act (Ill. Rev. Stat. 1985, ch. 116, par. 207(b)(v) is constitutional.

Section 3 of the Freedom of Information Act provides that every public body shall make available all public records to any person for inspection and copying except as otherwise provided in section 7. Section 7 specifies certain exemptions from inspection and copying, including the following:

"(b) Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy, unless such disclosure is consented to in writing by the individual subjects of such information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy. Information exempted under this subsection (b) shall include but is not limited to:

\* \* \*

(v) information revealing the identity of persons who file complaints with or provide information to administrative, investigative, law enforcement or penal agencies." Ill. Rev. Stat. 1985, ch. 116, par. 207(b)(v).

After the Freedom of Information Act took effect on July 1, 1984, the city of Monmouth refused to disclose to the Galesburg Register Mail newspaper and its reporter Carol Clark the identities of the victims of crimes occurring within the city. The city did make public the fact that a crime, such as burglary or theft, occurred at a general location, such as the 100 block of Third Avenue. When Clark presented written requests for additional information, such as name, age, sex, and address of the victims, the city clerk refused on the ground that such information was exempt from disclosure under section 7(b)(v) of the Freedom of Information Act. In each case, Clark and the newspaper appealed that decision to the mayor who affirmed the denial of information.

After more than 37 such requests were made and denied between July 9 and August 7, 1984, the city filed a complaint for declaratory judgment and an injunction against Clark and the Register Mail. The city sought to have the circuit court of Warren County declare that, under the statute, the identities of persons who file complaints with or provide information to the Monmouth police department were *per se* exempt from disclosure under the statute. The city also asked the court to enjoin defendants from making requests for such exempt information. Defendants filed a motion to strike and dismiss the complaint on the ground that the statute was unconstitutional and that the statute did not intend a *per se* determination that all criminal complainants and informants were exempt from disclosure.

The trial court ruled that the statutory provision in question does not violate either the Constitution of Illinois or the first and fourteenth amendments to the Constitution of the United States and that the statute does not authorize a categorical determination of exemption; rather, the city must show how each claim of exemption is a

clearly unwarranted invasion of personal privacy. The court dismissed the complaint with prejudice, and this appeal followed.

We are presented with three issues. (1) Did the trial court interpret the statute correctly? (2) Does the statute violate the constitutional guarantees of freedom of the press? (3) Does the complaint state a cause of action?

In our view, the determinative question is that of statutory interpretation. The city contends that section 7(b)(v) of the Freedom of Information Act grants exemption from disclosure as to the identity of all informants and complainants in criminal cases. In other words, the city interprets the statute as stating that, as to all persons in the category of informants and complainants, disclosure of identity would be an unwarranted invasion of their right to personal privacy. It is argued that the plain and ordinary meaning of the language used by the legislature was to specify certain categories of exempt information since paragraph (b) made the broad statement relating to right to privacy and subparagraphs (i) through (v) contain some types of information which are included.

Defendants, on the other hand, argue that paragraph (b) contains a general requirement that information entitled to exemption must be a clearly unwarranted invasion of personal privacy and that this general requirement qualifies subsections (i) through (v). That is, an informant or complainant would be entitled to an exemption from disclosure if disclosure would constitute a clearly unwarranted invasion of personal privacy in that particular case.

Defendants' interpretation is the one adopted by the trial court and is consistent with the public policy stated by the legislature in section 1 of the Act:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.
>
> This Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body inde-

pendent of the fulfillment of any of the fore-mentioned rights of the people to access to information.

This Act is not intended to create an obligation on the part of any public body to maintain or prepare any public record which was not maintained or prepared by such public body at the time when this Act becomes effective, except as otherwise required by applicable local, State or federal law.

These restraints on information access should be seen as limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed to this end." Ill. Rev. Stat. 1985, ch. 116, par. 201.

This statement of public policy and legislative intent indicates that the people's "right to know" what the government is doing is a broad general rule containing only limited exceptions, and the provisions of the Freedom of Information Act are to be construed accordingly. Courts called upon to interpret the Act, as we are, must be cognizant of the legislative intention that public access to information be construed broadly and that exemptions to disclosure be construed narrowly. The city's position is not consistent with that legislative intent.

■■ Additionally, it is a basic rule of construction that the legislature is presumed to have intended a statute to be constitutional and consequently that, given a choice, courts should construe a statute in such a way as not to invalidate it. That brings us to the question of the constitutionality of section 207(b)(v). Defendants argue that this provision is a prior restraint on their right to gather news for which there must be a showing of a compelling governmental interest and which must be narrowly tailored to serve that interest. Defendants cite *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 73 L. Ed. 2d 248, 102 S. Ct. 2613, where the United States Supreme Court held that a Massachusetts statute excluding press and public from the trials of specified sexual offenses involving a victim under the age of 18 violated the first amendment as applied to the States through the fourteenth amendment. The court found that there was a compelling State interest in safeguarding the physical and psychological well-being of a minor but that closure was not a narrowly tailored means of serving that interest. The court stated:

"But as compelling as that interest is, it does not justify a *mandatory* closure rule, for it is clear that the circumstances of the particular case may affect the significance of the interest.

A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of the minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives. [The statute], in contrast, requires closure even if the victim does not seek the exclusion of the press and general public, and would not suffer injury by their presence." (Emphasis in original.) (457 U.S. 596, 607-08, 73 L. Ed. 2d 248, 258, 102 S. Ct. 2613, 2620-1.)

The Supreme Court went on to hold that the State's interest in protecting a minor victim could be served just as well by requiring the trial court to determine on a case-by-case basis whether closure was necessary and that such an approach would ensure that the constitutional right of the press and public to gain access to criminal trials would not be restricted except where necessary to protect the State's interest. In the same opinion, the court rejected the argument that minor sex victims would be more likely to come forward and cooperate with authorities if the trial would be closed to the public and press. The court observed that the claim was speculative and of doubtful logic since there would be other sources that could provide information to the press concerning the testimony at trial.

■■ Applying the test used in the *Globe* case, the Freedom of Information Act as interpreted by the city was not narrowly tailored to serve a compelling governmental interest and, hence, would be unconstitutional if construed to give a blanket exemption from disclosure to all victims of crimes. Clearly, a case-by-case approach could be used to narrow the application of the State's interest in protecting persons whose right to privacy might be invaded without warrant. For example, where an informant's life could be endangered by revealing his or her identity, the city would be able to establish a justifiable right to privacy.

Although the city argues that this statute will be unworkable if the right to privacy of each criminal victim must be justified in order to prevent disclosure, the city's attorney admitted during oral argument that, if we affirm the trial court, the city will again supply the names of the victims of crimes to the press as it did before the Freedom of Information Act was enacted. Presumably informants and other special situations would be handled as contemplated by the statute.

We hold that the trial court was correct in its interpretation of the statute and in its finding that the statute, as interpreted, is con-

stitutional. Accordingly, since the complaint did not allege that each request for information was a clearly unwarranted invasion of privacy, the city's complaint did not state a cause of action under the statute. The order of dismissal is affirmed.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.