WILLIAM BAUDIN, Plaintiff-Appellant, v. THE CITY OF CRYSTAL LAKE, Defendant-Appellee.

Second District   No. 2—89—0240

Opinion filed December 15, 1989.

McLAREN, J., concurring.

W. Randal Baudin, of Madsen, Baudin, Stolfi & Sugden, of Crystal Lake, for appellant.

John L. Cowlin, of Cowlin, Ungvarsky, Kukla & Curran, of Crystal Lake, for appellee.

JUSTICE DUNN delivered the opinion of the court:

On June 20, 1988, plaintiff, William Baudin, filed an information request with defendant, City of Crystal Lake (City), regarding the policies and procedures of the Crystal Lake police department in the handling of information and the follow-up of a hit-and-run accident. Defendant denied plaintiff's request, claiming that the information was exempt from disclosure under Illinois law. After plaintiff unsuccessfully appealed to the City, he then sought disclosure pursuant to the Illinois Freedom of Information Act (Information Act or Act) (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*) by filing a complaint for a declaratory judgment and injunctive relief on July 21, 1988. Plaintiff specifically sought a *de novo* review and an *in camera* inspection of the disputed material to determine what must be disclosed to him under the Act. Ill. Rev. Stat. 1987, ch. 116, par. 211(e).

On February 8, 1989, the trial court, after hearing the arguments of counsel, denied plaintiff's request for an *in camera* inspection and granted defendant's motion for summary judgment. Plaintiff, an attorney acting *pro se*, appeals, contending that it was error for the trial court to refuse to inspect the materials *in camera* and to grant summary judgment to defendant because the trial court could not have made an independent, *de novo* determination of discloseable matter based only on the conclusory affidavits of defendant. We agree that the affidavits are merely conclusory and that the trial court had an inadequate factual basis for granting summary judgment for defendant. We reverse the judgment of the circuit court and remand the cause with instructions.

Plaintiff originally sought information concerning the policies and procedures of the police department with respect to: (a) handling and receiving information from telephone callers regarding automobile accidents (hit-and-run); (b) receiving information in person concerning an accident; (c) follow-up on information received concerning automobile accidents; and (d) investigation guidelines with respect to automobile accidents, including hit-and-run accidents. Plaintiff also sought excerpts of radio tapes of the City's police department for June 17, 1988, for the period between 8 p.m. and 8:30 p.m., and for June 18, 1988, from 9:15 a.m. to 9:45 a.m.

In response to plaintiff's request, defendant, through its freedom of information officer, Martin K. Vanags, sent a letter to plaintiff on June 23, 1988, denying plaintiff's request and claiming that items (a)

through (d) were exempt from disclosure under section 7(w) of the Information Act, which exempts information "related solely to the internal personnel rules and practices of a public body." (Ill. Rev. Stat. 1987, ch. 116, par. 207(w).) Vanags' letter also stated that the radio tapes were exempt from disclosure under section 7(e) of the Act, which exempts records of "State and local law enforcement agencies and correctional agencies that are related to the detection and investigation of crime." (Ill. Rev. Stat. 1987, ch. 116, par. 207(e).) Plaintiff appealed the decision to the city manager, Joseph Misurelli, as head of the public body. Misurelli affirmed the decision to deny disclosure, stating the same reasons for the denial.

Plaintiff sought review in the circuit court. On July 28, 1988, the circuit court entered an agreed order which denied plaintiff's request for injunctive relief concerning preservation of the tape excerpts, based on the representation and assurance by the City that the tape excerpts and the policies and procedures would be preserved during the pendency of the court proceedings and that they were to be tendered to the court for an *in camera* inspection as the court or plaintiff requested and as "otherwise provided by law."

On August 18, 1988, the City filed its answer and sought dismissal of plaintiff's action. On August 30, 1988, Baudin filed a motion to compel the City to produce the disputed materials for purposes of an *in camera* inspection by the trial court.

On September 12, 1988, the City filed a motion for summary judgment. Plaintiff filed his motion to strike the City's motion for summary judgment as well as the supporting affidavits which plaintiff claimed were conclusory; in the alternative, plaintiff moved to deny the defendant's motion for summary judgment.

The hearing to address these motions was periodically continued, and, on January 13, 1989, an order was entered setting the cause for further arguments on plaintiff's motion to compel, defendant's motion for summary judgment, and plaintiff's motion to strike defendant's affidavits and motion for summary judgment. Ultimately, the circuit court denied plaintiff's request for an *in camera* inspection and granted defendant's motion for summary judgment.

The central issue to be determined is whether the procedures utilized by the circuit court were sufficient to provide plaintiff an adequate *de novo* determination of whether the requested information was discloseable under the Act; as a corollary, it must be determined whether the City met its burden of showing that the materials requested were exempted under the Act.

The purpose of the Information Act is to open governmen-

tal records to the light of public scrutiny. (Ill. Rev. Stat. 1987, ch. 116, par. 201.) In order to foster governmental accountability and an informed citizenry, the public policy of this State encourages a free flow and disclosure of information between the government and the people; the Information Act is to be liberally construed to achieve this goal, and there is a presumption that public records are open and accessible, subject only to exemptions that are to be read narrowly. *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 378, 538 N.E.2d 557.

■ The restraints on access to information are to be regarded as limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of governmental activity that affect the conduct of government and the lives of people. (Ill. Rev. Stat. 1987, ch. 116, par. 201.) If any public record is exempt from disclosure under section 7 of the Act (Ill. Rev. Stat. 1987, ch. 116, par. 207) and it contains material which is not exempt, the public body shall delete the exempted material and make the remaining information available for inspection and copying. Ill. Rev. Stat., 1988 Supp., ch. 116, par. 208.

■ Under the Information Act, the burden of proof is on the City to establish that the material in question is exempt from disclosure; however, governmental agencies cannot clothe material regarding the affairs of government with an exemption from public disclosure by *ipse dixit* statements that the material is exempt. (*Hoffman v. Department of Corrections* (1987), 158 Ill. App. 3d 473, 475-76, 511 N.E.2d 759.) Reliance upon self-determination by public officials and employees as to what should or should not be disclosed to the public would frustrate the purposes of the Information Act. 158 Ill. App. 3d at 476.

■ Section 11(f) of the Act requires the circuit court to consider the matter *de novo* and requires the court to conduct whatever *in camera* inspection of the requested records it finds appropriate to determine whether the records or any part of them may be withheld under the Act. (Ill. Rev. Stat., 1988 Supp., ch. 116, par. 211(f).) Whether the material is exempt under the Act is necessarily a factual determination to be made by the court based on its examination of the affidavits and, if required, based on an examination of the documents themselves *in camera*. *Hoffman*, 158 Ill. App. 3d at 476-77.

■ In determining whether matter is exempt under the Act, a case-by-case approach is clearly warranted. (See *City of Monmouth v. Galesburg Printing & Publishing Co.* (1986), 144 Ill. App. 3d 224, 228, 494 N.E.2d 896; *Reinstein v. Police Commissioner* (1979), 378

Mass. 281, 290-91, 391 N.E.2d 881, 886.) An agency such as a police department cannot simply take the position that, since it is involved in investigatory work and some of its records are exempt from disclosure under the Act, every document in its possession somehow comes to share in that exemption. (See *Bougas v. Chief of Police* (1976), 371 Mass. 59, 66, 354 N.E.2d 872, 878.) The classification of information as "law enforcement" or "investigatory" does not necessarily foreclose access unless it can be shown, in a particular case, that disclosure would interfere with law enforcement and would, therefore, not be in the public interest. (*McClain v. College Hospital* (1985), 99 N.J. 346, 355-57, 492 A.2d 991, 996.) Routine review of governmental functions is not sheltered, but when the inquiry departs from the routine and focuses with special intensity upon a particular party, an investigation is under way. 99 N.J. at 355-57, 492 A.2d at 996.

Based on its particular facts, this case is one of first impression in this court. There is a paucity of Illinois case law dealing with the exemptions claimed by the City in the present case. We shall attempt to fill this void. Where necessary, we have considered persuasive decisions from other jurisdictions; in particular, we have considered decisions of the Federal courts, where the Illinois Act closely parallels Federal law. *Griffith Laboratories U.S.A. v. Metropolitan Sanitary District* (1988), 168 Ill. App. 3d 341, 345, 522 N.E.2d 744.

■■ ■ Plaintiff contends that the City failed to meet its burden of showing that it was entitled to the exemptions based on the City's conclusory affidavits; plaintiff argues that, in the absence of an *in camera* inspection of the requested materials, the court could not have made an informed decision to grant summary judgment to the City. Summary judgment should be granted only when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The trial court is to construe the record before it strictly against the movant. (*Gagliardo v. Vodica* (1978), 58 Ill. App. 3d 1053, 1055, 374 N.E.2d 1302.) Summary judgment is a drastic remedy and, as such, must be granted only when the movant's right to judgment as a matter of law is clear and free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867; *Allstate Insurance Co. v. Tucker* (1989), 178 Ill. App. 3d 809, 812, 533 N.E.2d 1004.

The City's motion for summary judgment alleged that the information requested by plaintiff (items (a) through (d)) was exempt from disclosure under section 7(e) of the Act because the information con-

cerns records of "State and local law enforcement agencies that are related to the detection and investigation of crime or the security and operations of correctional institutions." (Ill. Rev. Stat. 1987, ch. 116, par. 207(e).) Alternatively, the City's affidavits allege that the information requested was exempt from disclosure because it concerns matter "related solely to the internal personnel rules and practices of a public body." (Ill. Rev. Stat. 1987, ch. 116, par. 207(w).) In support of its motion, the City appended the affidavit of Martin K. Vanags. He stated that plaintiff's request for information (items (a) through (d)) related entirely to the "internal investigative rules and practices of the Crystal Lake Police Department regarding automobile accidents," because the information "specifically" concerned "the proper use of complaint memo forms and reporting procedures, the procedures for communications and record department personnel, and the proper procedure for preparing departmental reports subsequent to investigations by police personnel." The radio tapes (item (e)) were characterized as containing "the verbal reports of alleged criminal activity that is or has occurred in the City of Crystal Lake and are used for investigative purposes by the Police Department." The affidavit of Joseph Misurelli, who affirmed Vanags' decision to deny disclosure, was essentially a reiteration of Vanags' affidavit.

■ We find from our examination of the City's affidavits that they were entirely conclusory and merely recite or paraphrase the language of the statute without giving any clue as to the discloseability of the requested documents. As such, they provided an insufficient factual basis to permit the trial court to grant summary judgment to the City, particularly in the absence of an *in camera* inspection of the disputed material. The burden is on the governmental agency to prove that specific documents fit within one of the statutory exemptions. To meet this burden and to assist the court in making its determination, the agency must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing. *Antonelli v. Drug Enforcement Administration* (7th Cir. 1984), 739 F.2d 302, 303, citing *Vaughn v. Rosen* (D.C. Cir. 1973), 484 F.2d 820, 826-28 (*Vaughn I*).

■ As the *Vaughn* court explained, it is obvious that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. (484 F.2d at 823.) Therefore, aside from legal argument, where the sole support regarding the contents of documents and their exemption is contained in a conclusory affidavit, courts must no longer accept such conclusory or generalized allegations of exemption

and must require a relatively detailed analysis of the documents in manageable segments. *Vaughn*, 484 F.2d at 823, 826.

When an agency meets its burden by means of affidavits, *in camera* review is not necessary. (*Hayden v. National Security Agency* (D.C. Cir. 1979), 608 F.2d 1381, 1387.) However, the affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. 608 F.2d at 1387.

We observe that, in the present case, one of the exemptions claimed by defendant was embodied in a statutory provision which has been amended during the pendency of this case in the trial court, a fact apparently unnoticed by the parties. (Pub. Act 85—1357, eff. Jan. 1, 1989 (amending Ill. Rev. Stat. 1987, ch. 116, par. 207(e)).) The case must be disposed of by the reviewing court under the law as it exists at the time its decision is rendered. To the extent that defendant claims an exemption under section 7(e) regarding the "investigation and detection of crime," defendant's claim is mooted by the deletion of that language that formerly applied to law enforcement agencies, and that aspect of the former statutory provision is no longer at issue. (See *People v. B.D.A.* (1984), 102 Ill. 2d 229, 233, 464 N.E.2d 1073, 1075.) If the City is to sustain its burden of showing that it is entitled to an exemption because the material pertains specifically to the detection and investigation of crime, it must undoubtedly do so under one of the specific provisions of section 7(c) of the amended Act (Ill. Rev. Stat., 1988 Supp., ch. 116, par. 207(c)). On remand defendant will have to demonstrate what, if any, provision in that section is applicable. We decline to assume the role of advocate for the government on appeal, and we will act only on the record as it presently exists. See *People v. Bartlett* (1988), 175 Ill. App. 3d 686, 691, 530 N.E.2d 90.

Though we have determined that the City's affidavits were conclusory and that the trial court had an insufficient basis to grant summary judgment for defendant, our inquiry is not yet complete. Because the trial court must hold further proceedings consistent with the views expressed in this opinion, we believe that a recurring question will necessarily arise regarding the standard by which the circuit court is to determine the applicability of the remaining exemption claimed by defendant under section 7(w) of the Act, information related solely to the "internal personnel rules and practices of a public body," in this case, a law enforcement agency.

Defendant contends that the affidavits in support of its motion for summary judgment established that the information requested in items (a) through (d) of plaintiff's request is related to the internal

personnel rules and practices of a public body and that the material involved the detection, investigation, evaluation, and processing of automobile accident complaints filed with the City. Furthermore, defendant argues that the policies and procedures are not written to regulate the public and do not embody any "secret law" of the police department; rather, the withheld information refers to investigative techniques in the form of prescribed rules and practices. Defendant maintains that the documents requested by plaintiff are internal, directional regulations which have no public utility. Defendant's characterization of the materials as investigative, internal personnel practices is, of course, conclusory. Defendant cites no authority for the proposition that such a characterization, even if valid, automatically confers an absolute exemption on the disclosure.

The Illinois exemption for "internal personnel rules and practices" is similar to the Federal Freedom of Information Act provision commonly known as "Exemption 2." (5 U.S.C.A. §552(b)(2) (West 1977); see *Hardy v. Bureau of Alcohol, Tobacco & Firearms* (9th Cir. 1980), 631 F.2d 653, 655.) The *Hardy* court determined that materials instructing law enforcement agents on how to investigate violations concerned internal personnel practices. 631 F.2d at 656. But see *Hawkes v. Internal Revenue Service* (6th Cir. 1972), 467 F.2d 787, 796-97 (internal personnel rules and practices refer only to employee-employer relations and working conditions; however, exemption found in other provisions of the Act).

In interpreting the coverage of Exemption 2, the *Hardy* court held:

> "[L]aw enforcement materials, disclosure of which may risk circumvention of agency regulation, are exempt from disclosure. In so ruling we recognize the distinction between 'law enforcement' and 'administrative' materials. See, *e.g.*, *Hawkes v. Internal Revenue Service*, 467 F.2d 787, 794-95 (6th Cir. 1972). 'Law enforcement' materials involve methods of enforcing the laws, however interpreted, and 'administrative' materials involve the definition of the violation and the procedures required to prosecute the offense. All administrative materials, even if included in staff manuals that otherwise concern law enforcement, must be disclosed unless they come under one of the other exemptions of the act. Such materials contain the 'secret law' which was the primary target of the act's broad disclosure provisions." 631 F.2d at 657.

Finding certain law enforcement materials of the Internal Revenue Service discloseable under section (a)(2)(C) of the Federal Act (5

U.S.C.A. §552(a)(2)(C) (West 1977)), which concerns administrative staff manuals and instructions to staff, the *Hawkes* court described the law enforcement process and the limits of disclosure in the following terms:

"Law enforcement is the process by which a society secures compliance with its duly adopted rules. Enforcement is adversely affected *only* when information is made available which allows persons simultaneously to violate the law and to avoid detection. Information which merely enables an individual to conform his actions to an agency's understanding of the law applied by that agency does not impede law enforcement and is not excluded from compulsory disclosure under (a)(2)(C).

Far from impeding the goals of law enforcement, in fact, the disclosure of information clarifying an agency's substantive or procedural law serves the very goals of enforcement by encouraging knowledgeable and voluntary compliance with the law. Such clarifying information is found in agency rulings made public; it is also found in many cases in manuals and instructions like those sought here which are addressed specifically to agency personnel. It may be found in the criteria for investigative action; in standards for evaluation and so forth. Materials providing such information are administrative in character and clearly discloseable \*\*\*.

The exception for law enforcement materials contained in (a)(2)(C) is, as suggested above, a very narrow one and is to be applied only where the sole effect of disclosure would be to enable law violators to escape detection. Thus, for example, there is reason to exempt from compulsory revelation details of a selective enforcement policy made necessary by a lack of sufficient investigatory personnel. Similarly interrogation techniques or the mechanics of an F.B.I. 'stakeout' arrangement properly could be excluded from disclosure \*\*\*." (Emphasis in original.) *Hawkes v. Internal Revenue Service,* 467 F.2d at 795.

In *Hawkes,* the United States Court of Appeals for the Sixth Circuit announced a variation of the test for excluding law enforcement materials from mandatory disclosure. The court stated that only "information which, if known to the public, would *significantly impede* the enforcement process" falls within the exemption in section (a)(2)(C). (Emphasis in original.) 467 F.2d at 795.

In *Crooker v. Bureau of Alcohol, Tobacco & Firearms* (D.C. Cir. 1981), 670 F.2d 1051, a definitive test has been applied to "Exemption 2" regarding personnel rules and practices of an agency. *Crooker*

traced the evolution and development of the law regarding the disclosure of investigatory and law enforcement materials. The United States Court of Appeals for the District of Columbia Circuit held in *Crooker* that certain portions of the Bureau's agents' training manual entitled "Surveillance of Premises, Vehicles and Persons—New Agent Training" were exempt from disclosure under the internal personnel rules and practices exemption because they were developed predominantly for internal use *and* disclosure would significantly risk circumvention of the agency's regulations or statutes. (670 F.2d at 1075.) In so holding, the court observed that the manual was used for predominantly internal purposes; it was designed to establish rules and practices for agency personnel, *i.e.*, law enforcement investigatory techniques; it involved no "secret law" of the agency; and, it was conceded that public disclosure would risk circumvention of the agency's regulations.

In formulating a two-pronged test of "predominant internality" and disclosure significantly risking circumvention of an agency's regulations or statutes, the court relied on the Supreme Court's language in *Department of the Air Force v. Rose* (1976), 425 U.S. 352, 364, 369-70, 48 L. Ed. 2d 11, 23, 26, 96 S. Ct. 1592, 1600, 1603, as well as on the expression "predominant internality" used by Judge Leventhal in *Jordan v. United States Department of Justice* (D.C. Cir. 1978), 591 F.2d 753, 783-84 (*en banc*) (Leventhal, J., concurring). See also *Vaughn v. Rosen* (D.C. Cir. 1975), 523 F.2d 1136, 1150-51 (*Vaughn II*) (Leventhal, J., concurring).

Judge Leventhal stated:

"Exemption 2 is applicable where the document consists of internal instructions to such government officials as investigators and bank examiners. In such a case disclosure would permit circumvention of the law, and there is no substantial, valid external interest of the community at large in revelation. That composite presents a matter that involves solely internal personnel rules and internal practices of an agency for purposes of making Exemption 2 applicable." *Jordan*, 591 F.2d at 783 (Leventhal, J., concurring).

Judge Leventhal further explained:

"[W]hen what is involved are internal instructions to such officials ***, and revelation would permit circumvention of law and regulations by the regulated and there is no substantial valid external interest, there is the essential quality of predominant internality ***." 591 F.2d at 783 (Leventhal, J., concurring).

■■ The *Crooker* test has been adopted by several appellate courts. (See cases cited in *Hobart Corp. v. Equal Employment Opportunity Comm'n* (S.D. Ohio 1984), 603 F. Supp. 1431, 1450, vacated (1985), 716 F. Supp. 307.) The United States Court of Appeals for the Seventh Circuit has cited the *Crooker* test with approval, pointing out that it has now been codified at 5 U.S.C. § 552(b)(7)(E) (1988). (*Kaganove v. Environmental Protection Agency* (7th Cir. 1988), 856 F.2d 884, 889.) We find the *Crooker* test applicable to the present case and hereby adopt it as the standard to determine whether investigatory or law enforcement materials should be disclosed under section 7(w) of the Illinois Information Act (Ill. Rev. Stat. 1987, ch. 116, par. 207(w)). It is likely that the Crooker test may also be applicable to certain provisions of section 7(c) of the Act (Ill. Rev. Stat., 1988 Supp., ch. 116, par. 207(c)). However, that precise question is not presently before us.

■■■ To summarize, we hold that: (1) the City has not met its burden of showing that it was entitled to the claimed exemptions; (2) the City's affidavits were conclusory and constituted an insufficient basis for the trial court to grant summary judgment for the City; and (3) when a governmental agency such as defendant here believes that materials sought under our Freedom of Information Act are within an exempt category of investigatory or law enforcement materials as described herein, it should submit to the circuit court a detailed affidavit describing how disclosure *significantly* risks circumvention of the law or of the agency's regulations. Where "investigatory" or "law enforcement" materials are involved, if the agency claims an exemption under the internal policies and practices provision, the test to determine whether the material is to be disclosed is the *Crooker* test. If a document for which disclosure is sought meets the test of "predominant internality" and if the disclosure significantly risks circumvention of the agency's regulations or of statutes, the material is exempt from mandatory disclosure.

■■■ Upon remand, the trial court must make a *de novo* review of the agency's classification decision, and the burden is on the agency to justify nondisclosure. The trial court shall require the agency to create as full a public record as possible concerning the nature of the documents and the justification for nondisclosure without compromising the secret nature of the information. If the affidavits show with reasonable specificity why the documents fall within the claimed exemption under the test announced here, then summary judgment is appropriate without *in camera* review. The affidavits must be sufficient to allow adversarial testing. If the agency fails to make a sufficient showing by affidavit to permit a responsible *de novo*

review, the trial court may order *in camera* review of the documents. In such a case, those portions not covered by affidavit or containing "secret law" may be ordered disclosed. (See *Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d at 657.) The circuit court shall order the release of segregable portions of documents that do not fall within the claimed exemption. (See *Hayden v. National Security Agency*, 608 F.2d at 1384.) The indexing of documents is not required unless the plaintiff brings a motion to that effect under the new provisions found in section 11(e) of the Act (Ill. Rev. Stat., 1988 Supp., ch. 116, par. 211(e)).

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

UNVERZAGT, P.J., concurs.

JUSTICE McLAREN, concurring:

I concur in the majority opinion. However, I believe one aspect of the opinion needs greater emphasis. The placement of detailed information in an affidavit is necessary if the trial court is to be sufficiently apprised of the nature and extent of the information contained in the contested documentation. Disclosure of such information in an affidavit may foreseeably result in disclosure of the information sought by the plaintiff. The defendant, in attempting to keep such information from the plaintiff, will find it extremely difficult to prepare affidavits that give the court sufficient information to determine that a privilege exists while simultaneously constricting the information to safeguard nondisclosure via the affidavit.

The trial court should be hesitant in determining a privilege exists based solely on the affidavits submitted by the defendant, for without an *in camera* review there is no external means to verify the truthfulness of the affidavits submitted by the defendant. I therefore believe that trial courts, except in rare instances, should not determine that a privilege exists without an *in camera* review of the contested documentation.

"The proof of the pudding is in the tasting."