CARBONDALE CONVENTION CENTER, INC., *et al.*, Plaintiffs-Appellees, v. THE CITY OF CARBONDALE, Defendant-Appellee (Illinois Press Association *et al.*, Intervenors-Appellants).

Fifth District    No. 5—92—0143

Opinion filed May 27, 1993.

LEWIS, J., specially concurring.

Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellant Illinois Press Association.

Michael L. Wepsiec, City Attorney, of Carbondale, for appellee City of Carbondale.

Charles C. Hines, of Carbondale, for other appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Carbondale Convention Center, Inc., brought this action against defendant, City of Carbondale, for breach of contract. The parties agreed to settle the matter on August 17, 1990, and sought an order of dismissal from the trial court. On September 6, 1990, the Southern Illinoisan newspaper in Carbondale requested a copy of the settlement agreement. On September 19, 1990, the trial court entered an order of dismissal which contained the following provision at the request of the parties:

> "It is the further Order of this Court that neither the parties to this litigation, nor their agents, representatives, employees,

> successors or assigns may disclose to anyone the terms or conditions constituting the resolution of the dispute between the parties."

After the order was entered, defendant denied the Southern Illinoisan's request under the Freedom of Information Act (the Act) (Ill. Rev. Stat. 1989, ch. 116, par. 201 *et seq.*), relying on the court's order as the basis for its denial. On October 18, 1990, the Illinois Press Association, the Southern Illinoisan newspaper, and Tracy James, a reporter for the Southern Illinoisan, filed a petition to intervene. The trial court granted their petition, and the intervenors then filed a complaint in intervention, requesting that the gag order be vacated and requesting production of the settlement agreement pursuant to the Act. Both plaintiff and defendant moved to dismiss the complaint in intervention. On June 19, 1991, the trial court granted the motion to dismiss, finding that the gag order was entered at the request of the parties and that section 7(1)(bb) of the Act exempts the settlement agreement from disclosure. (Ill. Rev. Stat. 1989, ch. 116, par. 207(1)(bb).) The issues on appeal are: (1) whether the Act requires release of settlement documents; and (2) whether the gag order is unconstitutional. We reverse and remand.

■ The first question we will address is whether the Act mandates defendant to release the documents regarding the settlement agreement between plaintiff and defendant. Defendant does not contend that the Act does not apply to it. Section 1 of the Act provides, in pertinent part:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." (Ill. Rev. Stat. 1989, ch. 116, par. 201.)

There is a presumption that public records be open and accessible, subject only to exemptions that are to be narrowly construed. (*Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559.) Although section 7 of the Act provides an extensive list of exemptions to disclosure, the burden of proof is on the governmental agency to establish that the docu-

ments in question are exempt from disclosure. (*Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 535, 548 N.E.2d 1110, 1113.) "To meet this burden and to assist the court in making its determination, the agency must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing." (Emphasis in original.) (192 Ill. App. 3d at 537, 548 N.E.2d at 1114.) Defendant denied the intervenors' request just after the trial court entered the gag order, citing section 7(1)(a) as an applicable exemption to the Act. That section provides:

"(1) The following shall be exempt from inspection and copying:

(a) Information specifically prohibited from disclosure by Federal or State law or rules and regulations adopted pursuant thereto." Ill. Rev. Stat. 1989, ch. 116, par. 207(1)(a).

■ Defendant asserts that the trial court's dismissal order strictly prohibits defendant from disclosing the terms or conditions of the settlement agreement, and that such an order constitutes State law. Assuming for purposes of this argument and without so holding that such an order is a "State law," we find this position incompatible with the intent of the Act. In the case at bar, defendant requested the court to impose the gag order. Therefore, the "State law" defendant asserts as exempting disclosure of the agreement exists, in part, as a result of defendant's efforts to prevent disclosure of the agreement. Since such an action contradicts the purpose and intent of the Act under which the exemptions are intended as shields rather than swords, we hold section 7(1)(a) does not apply as a possible exemption in this case.

Defendant states in a supplemental memorandum in support of its motion to dismiss and/or strike complaint of intervention that sections 7(1)(b) and 7(1)(bb) of the Act are applicable exemptions to its disclosure of the settlement documents. Section 7 reads as follows, in pertinent parts:

"§7. (1) The following shall be exempt from inspection and copying:
* * *

(b) Information which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy * * *.
* * *

(bb) Insurance or self insurance (including any intergovernmental risk management association or self insurance pool) claims, loss or risk management information, records, data, ad-

vice or communications." (Ill. Rev. Stat. 1989, ch. 116, pars. 207(1)(b), (1)(bb).)

Defendant did not support these assertions with any affidavits or proof of any kind, however, and did not provide a detailed justification for its claim of exemption. Defendant therefore failed to meet its burden of proof that either exemption applies. Accordingly, the trial court erred in finding that section 7(1)(bb) exempts defendant from disclosing the settlement documents. Whether section 7(1)(bb) or any other exemption applies to this matter must be proven by defendant with more than just an assertion. Dismissal of intervenors' complaint was in error, and we hereby reverse the trial court's order and remand this cause to the trial court for a hearing to determine whether defendant is exempted from providing intervenors the information they seek under the Act.

Since we have resolved this appeal on the basis of the Act, we need not address the constitutionality of the gag order.

For the foregoing reasons, the order of the circuit court of Jackson County dismissing intervenors' complaint is reversed, and the cause is remanded for a hearing.

Reversed and remanded.

MAAG, J., concurs.

LEWIS, J., specially concurring:

While I agree with the majority that the Freedom of Information Act (the Act) (Ill. Rev. Stat. 1989, ch. 116, par. 201 *et seq.*) should be available to a government only as a shield from requests for information from the citizenry rather than to be used as a sword by the government to block legitimate requests for information, I believe that we should construe section 7(1)(a) and answer the City of Carbondale's assertion that the gag order is "State law," and thus information prohibited to be disclosed by the gag order is exempt under the Act.

Further, one might misinterpret the majority opinion as saying that a government cannot make any effort in court to prevent disclosure of information that is shielded by the Act or else such information would become nonexempt. I am sure that the majority opinion is not intended to prohibit a government from actively defending and legitimately shielding itself from disclosure of information exempted under the Act.

The city argues that *Debolt v. Mutual of Omaha* (1978), 56 Ill. App. 3d 111, 371 N.E.2d 373, holds that court orders are law and thus become "State law" under the Act. *Debolt* might correctly hold that court orders are law, but it takes a giant leap in logic to conclude that the legislature intended under section 7(1)(a) of the Act that court orders were the type of "State law" the legislature had in mind. *Debolt* points out: "[W]e do not deem the making of law by judicial decree to be a desirable practice per se but should be limited to instances when humanitarian needs dictate the necessity of judicial action or when legislative bodies for an unreasonably long time refuse to enact statutory law for the purpose of coping with an enduring and festering problem." (*Debolt v. Mutual of Omaha*, 56 Ill. App. 3d at 116-17, 371 N.E.2d at 378.) It is difficult to comprehend how the need for and the creation of the torts of intentional infliction of severe emotional distress or retaliatory discharge by the courts would justify the transmutation of improper gag orders into "State law," thereby becoming an exemption under the Freedom of Information Act.

The city's argument leads to a variation of the *Catch 22* situation: The city requests a gag order to prohibit a citizen from validly obtaining information. The trial judge protests and says that such an order is improper and illegal under the Act. The city attorney then tells the judge: "All you have to do to make the order legal is to sign the order and your improper and illegal order becomes 'State law' and legal." If one were to carry this argument to the extreme, all information regarding the affairs of government would be legally exempt from disclosure as long as the government could find a judge to sign an order prohibiting disclosure.

Finally, the city's argument prevents review by the appellate courts as to the correctness of the trial judge issuing the gag order in the first instance. If the gag order is "State law," how could this court invalidate the law (excluding constitutional grounds) regardless of how wrong the law or court order may be? The Act is very clear that information specifically prohibited by Federal or State law is exempted and thus the appellate courts would be at a loss for grounds to overturn a "State law."

The legislature would surely be surprised to learn that every time a statute contained the words "State law" it included all trial court orders construing such. If we were to follow the city's reasoning, the legislature would have to make a specific exclusion of court orders every time it used the words "State law"; otherwise, the courts could rewrite the legislation any way the courts deemed best. I am sure

that the relations between the judiciary and the legislature would not be ameliorated by such a ruling.

Our holding should be that "State law" as used in section 7(1)(a) of the Act does not include court gag orders.