2022 IL App (3d) 210058

Opinion filed November 30, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| EDGAR COUNTY WATCHDOGS, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-21-0058 |
| | ) | Circuit No. 19-CH-1583 |
| THE WILL COUNTY SHERIFF'S OFFICE, | ) | |
| | ) | Honorable John C. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court, with opinion.
Justice McDade specially concurred in part and dissented in part, with opinion.
Justice Daugherity specially concurred in part and dissented in part, with opinion.

_____

**OPINION**

¶ 1        Plaintiff, Edgar County Watchdogs (ECW), brought a complaint against defendant, Will

County Sheriff's Office (Sheriff's Office), seeking equitable relief under the Freedom of

Information Act (FOIA or Act) (5 ILCS 140/1 *et seq.* (West 2018)). The parties filed cross-motions

for summary judgment. In relevant part, the court entered summary judgment in favor of ECW as

to its requests for disclosure of certain 911 recordings. The Sheriff's Office appeals. It argues that

the trial court erred when it found that the 911 recordings were not exempt from disclosure.

Alternatively, the Sheriff's Office contends that the trial court erred when it required the Sheriff's

Office to either produce the records using computer software to mask the caller's voice or create a transcript of the calls. We affirm in part and reverse in part.

¶ 2                                                                     I. BACKGROUND

¶ 3        ECW filed two separate FOIA requests to the Sheriff's Office, which are the subject of this appeal. On August 7, 2019, ECW made its first request. ECW made its second request on August 8, 2019. ECW ultimately filed a complaint in the circuit court challenging the Sheriff's Office's response to its requests.

¶ 4                                                           A. August 7, 2019, Request

¶ 5        On August 7, 2019, ECW submitted a FOIA request to the Sheriff's Office requesting:

> "1.Copy of any 911 calls or any call made for help/assistance from an officer or police presence for wellness checks, disturbance or theft, at the Wesley Rivals Township Park for June 1 through June 30, 2019 ***.
>
> 2. Copy of any 911 calls or any other call made for help/assistance relating to anything at Rivals Park on August 6, 2019.
>
> 3. Copy of any reports, notes, statements, etc. relating to anything at Wesley Township and/or Rivals Park for/on August 6, 2019."

¶ 6        On August 13, 2019, the Sheriff's Office granted the request in part and denied it in part. The Sheriff's Office provided activity reports and a police report. The Sheriff's Office redacted the majority of the victim statement in the police report. The Sheriff's Office denied the request for all 911 calls relating to anything at Wesley Rivals Township Park on August 6, 2019.

¶ 7        On August 13, 2019, ECW sent a letter to the Sheriff's Office, narrowing its request to only those 911 calls relating to seven specific incidents. Five of those incidents occurred in June 2019 and two occurred in August 2019. The Sheriff's Office also denied that request.

¶ 8                                    B. August 8, 2019, Request

¶ 9        On August 8, 2019, ECW submitted a separate request to the Sheriff's Office seeking 911 calls or other calls, as well as reports, notes, and statements for the park or Wesley Township.

¶ 10       The Sheriff's Office provided ECW with an "Address Activity Report" and a copy of the incident report. The report included a redaction of the majority of the narrative section of the report. The Sheriff's Office denied ECW's request for 911 calls in its entirety.

¶ 11                                   C. ECW Files Its Complaint

¶ 12       ECW filed a six-count complaint against the Sheriff's Office, claiming it wrongfully denied ECW's requests for documents pursuant to the FOIA. ECW challenged the Sheriff's Office's denial of its requests to produce the 911 calls and sought unredacted copies of the statements included in the police reports produced by the Sheriff's Office. The complaint included claims that the Sheriff's Office failed to conduct an adequate search and willfully and intentionally violated the FOIA request. The complaint also sought attorney fees and costs.

¶ 13       The parties filed cross-motions for summary judgment. In relevant part, the Sheriff's Office argued that disclosure of the 911 audio recordings was exempt under the confidentiality provisions of section 7(1)(d)(iv) of the FOIA (*id.* § 7(1)(d)(iv)). Specifically, the Sheriff's Office claimed the recordings were confidential statements made by individuals who file complaints with or provide information to law enforcement. The calls could not be altered or redacted to protect the speaker's identity. According to the Sheriff's Office, the content of the statement and the tonal qualities of the speaker's voice would reveal his or her identity. The Sheriff's Office attached the affidavit of Shannon Wahl, the Sheriff's Office's FOIA administrator. Wahl reviewed the requested records and determined that the records were exempt because the recordings revealed the identity of the callers. Wahl based her opinion on the fact that Wesley Township had a small population. The

Sheriff's Office also attached the affidavit of an employee of its information technology department. The employee averred that the Sheriff's Office did not have computer software capable of masking the caller's voice in the 911 recordings at the time of ECW's request. However, the Sheriff's Office now had software capable of making the requested changes to the recordings.

¶ 14　　　　The court performed an *in camera* review of the recordings. It entered a written order in which it found "the substantive content of the material does not fall under FOIA exemptions for material that is personal, private, or confidential." However, the court accepted the Sheriff's Office's argument that "the voice qualities are exempt" and determined that ECW was entitled to either an altered audio recording (to hide the caller's identity) or transcripts of the 911 calls. The court also granted ECW's motion for summary judgment and required the Sheriff's Office to provide ECW with unredacted versions of the victim statements contained in the written police reports corresponding to the 911 calls. The Sheriff's Office does not challenge that decision in this appeal. The court, however, granted summary judgment in favor of the Sheriff's Office as to the claims of failure to conduct an adequate search and willful and intentional violation of the FOIA. The court did not resolve ECW's request for attorney fees, but it did allow ECW to file a petition for fees.

¶ 15　　　　The Sheriff's Office appeals.

¶ 16　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　At the outset, we must consider our jurisdiction to consider this appeal. At oral arguments, counsel for ECW noted that the order appealed from may not be final in light of the fact that its request for attorney fees remains pending in the trial court. We find that we have jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). The order appealed from

compels the Sheriff's Office to provide ECW with the requested 911 calls. The order is in the form of an injunction and may be appealed under Rule 307(a)(1).

¶ 18 Turning to the merits, the Sheriff's Office contends that the trial court erred in granting summary judgment in favor of ECW as to the disclosure of the 911 recordings. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 48. Normally, when parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. We usually review *de novo* an order granting summary judgment. *State Farm Mutual Automobile Insurance Co. v. Progressive Northern Insurance Co.*, 2015 IL App (1st) 140447, ¶ 63. However, the circumstances here are unique in that the trial court performed an *in camera* inspection of the recordings in question, considered the Sheriff's Office's affidavits, and made a factual determination as to whether the recordings were exempt. Where the trial court conducts an evidentiary hearing (like the *in camera* inspection here) and makes factual findings, we review whether the trial court's factual findings were against the manifest weight of the evidence, while still reviewing questions of law *de novo*. See *Hites v. Waubonsee Community College*, 2018 IL App (2d) 170617, ¶ 51. Therefore, we apply a mixed standard of review.

¶ 19 The Sheriff's Office raises two alternative arguments on appeal. First, the Sheriff's Office contends that the 911 recordings (in any form) should be exempt from disclosure because the content of the call reveals the caller's identity. Alternatively, it argues that masking the audio or creating a transcript of the recording constitutes the creation of a new record, which it is not required to do under the Act. We discuss each argument in turn.

¶ 20            The purpose of the Act is:

> "that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2018).

An individual who has been denied access to records may file an action in the circuit court for injunctive or declaratory relief. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 23 (citing 5 ILCS 140/11(a) (West 2010)). The public body has the burden to prove, by clear and convincing evidence, that the requested records fall within an exemption. 5 ILCS 140/11(f) (West 2018). This burden is met when the public agency " 'provide[s] a detailed justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing.' " (Emphasis omitted.) *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 464 (2003) (quoting *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 537 (1989)). Section 11(f) of the Act (5 ILCS 140/11(f) (West 2018)) requires the circuit court to review the request for documents *de novo* and conduct an *in camera* examination of the requested records as it finds appropriate to determine if the records, or any part thereof, may be withheld under any provision of the Act. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 418 (2006).

¶ 21            Public records are presumed to be open and accessible under the Act, and section 3(a) of the Act provides that a public body must comply with a request for such records unless one of the

Act's exemptions applies. *Chicago Journeymen Plumbers' Local Union 130, U.A. v. Department of Public Health*, 327 Ill. App. 3d 192, 195 (2001); 5 ILCS 140/3(a) (West 2018). "The exemptions are set forth in section 7 of the Act [citation]." *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 408 (1997). If a public body denies a request and the requesting party challenges the denial in the circuit court, "the public body has the burden of proving that the records in question fall within the exemption it has claimed." *Id.*

¶ 22    In this case, the Sheriff's Office claimed the 911 recordings were exempt under section 7(1)(d)(iv) of the Act. This section provides that records of the public body are exempt from FOIA requests where they "unavoidably disclose the identity of *** persons who file complaints with or provide information to administrative, investigative, law enforcement, or penal agencies." 5 ILCS 140/7(1)(d)(iv) (West 2018). There is no question that the 911 calls in this case qualify as records of persons who file complaints with or provide information to law enforcement agencies. However, such records are exempt from disclosure *only* to the extent that disclosure would unavoidably disclose the identity of the person who filed the complaint or provided the information to the agency. The agency is required to disclose any record or part thereof that does not "unavoidably disclose the identity" of the person who files complaints with or provides information to law enforcement agencies. *Id.* The Act plainly attempts to strike a balance between disclosing "full and complete information regarding the affairs of government" with protecting the privacy and identity of the victims and witnesses who report crimes or other events to law enforcement. *Id.* § 1.

¶ 23    The trial court exercised its authority and performed an *in camera* inspection of the 911 recordings to determine whether disclosure was statutorily barred. The Act authorizes the trial court to conduct an "*in camera* examination of the requested records *** to determine if such records or any part thereof may be withheld under any provision of this Act." (Emphasis added.)

See *id.* § 11(f). An "*in camera* review is the most effective way for the public body to objectively demonstrate that the exemption claimed does, in fact, apply." *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 13 (2010). Following its review, the court concluded that the tonal qualities of the speaker were exempt given that the sound of the caller's voice may reveal their identity. However, the court concluded "the substantive content of the material does not fall under FOIA exemptions for material that is personal, private, or confidential."

¶ 24    We cannot say the trial court's decision was against the manifest weight of the evidence. The 911 calls, which the trial court reviewed *in camera*, are not included in the record on appeal. As a result, our ability to review the issue is rendered impossible, as we are unable to determine whether the trial court's finding that the recordings would not unavoidably disclose the caller's identity was against the manifest weight of the evidence. The appellant could have—but did not—include the recordings in the record on appeal. An incomplete record must be construed against the appellant where the lack of record hinders our review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394 (1984). Consequently, we must defer to the trial court's factual findings. Therefore, we cannot find the trial court erred when it determined that the Sheriff's Office failed to meet its burden in establishing that the recordings were exempt from disclosure.

¶ 25    To the extent that the Sheriff's Office suggests that this court should adopt a blanket rule and find that all 911 recordings should be exempt regardless of the substantive content of the calls, we disagree. 911 recordings are not automatically exempt from disclosure in their entirety. Those calls are only exempt to the extent that the recordings would unavoidably disclose the identity of the caller. 5 ILCS 140/7(1)(d)(iv) (West 2018). Not every statement in a 911 recording would unavoidably disclose the caller's identity. For example, date, time, and location of reported

incidents are not exempted under section 7(1)(d)(iv). This information is not inherently unique. In addition, the Sheriff's Office attached an affidavit to its motion for summary judgment in which the Sheriff's Office averred that it possessed the technology needed to mask the tonal qualities of the speaker's voice to avoid disclosure of the caller's identity. Therefore, we decline the Sheriff's Office's invitation to adopt a blanket rule exempting all 911 recordings from disclosure under the Act.

¶ 26     Next, the Sheriff's Office contends that the trial court erred when it ordered the Sheriff's Office to provide ECW with either an altered recording disguising the caller's voice or to produce a transcript of the recordings. The Sheriff's Office contends that this constitutes the creation of a new record, which it is not required to do under the FOIA. This is a question of law, which we review *de novo*. *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22.

¶ 27     FOIA does not require a public body to create a new record. However, deleting information from a record does not create a new record, even if all but one or two items of information have been deleted. *Family Life League v. Department of Public Aid*, 112 Ill. 2d 449, 457-58 (1986). Similarly, scrambling a record does not lead to the creation of a new record. *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 382 (1989).

¶ 28     We find that the Sheriff's Office is not being asked to prepare a new record by using computer software to mask the voice of the caller in the recordings. The Sheriff's Office is only being asked to modify the original record in its possession. This is no different than requiring a public body to remove exempt material from a written document. No new content is created, the existing document is simply altered to remove exempt information. The Sheriff's Office conceded that it now has software capable of masking the audio recording. Therefore, the trial court did not err in requiring the Sheriff's Office to use computer software to alter the recordings.

¶ 29    Conversely, we find that producing a transcript of the recordings constitutes the creation of a new record. Preparing transcripts is not an alteration or redaction of the original document in the Sheriff's Office's possession. The Sheriff's Office does not maintain transcripts of the 911 calls in the ordinary course of business. Thus, producing a transcript would require preparing a record that does not already exist. Consequently, the trial court erred when it required the Sheriff's Office to create a transcript of the 911 recording as an alternative to altering the audio recordings itself.[1]

¶ 30    Finally, the problem with dissenting positions is that each position ignores the plain and unambiguous language of the Act. As to the dissent's position that all 911 calls should be exempt, section 7(1)(d)(iv) of the Act plainly exempts the contents of 911 recordings *only* where it would "unavoidably disclose" the identity of the caller. 5 ILCS 140/7(1)(d)(iv) (West 2018). The trial court made a specific finding of fact that the recordings would *not* disclose the identity of the callers. Therefore, the dissent would rewrite the exemption section of section 7(1)(d)(iv) to adopt a blanket exemption without exceptions. Additionally, as to the partial dissent's position that the Sheriff's Office should provide transcripts of the recordings, the Act "is not intended to create an obligation on the part of any public body to maintain or prepare any public record which was not maintained or prepared by such public body." *Id.* § 1. Hiring an individual to listen to the 911 recordings (which often requires judgment calls on what is said in the recording) and then type a written transcript is clearly "preparing" a new record that does not already exist. If hiring someone to transcribe 911 recordings does not constitute the preparation of a new record, then what does? Both dissenting positions set forth policies that one may argue would improve the Act. However,

_____

[1]We note that a government agency may voluntarily prepare transcripts in response to FOIA requests if they so choose, but are not required to do so by statute.

implementing such policies is in contradiction to the plain language of the Act, and is not the role of the judiciary. "[W]hether a statute is wise and whether it is the best means to achieve the desired result are matters for the legislature, not the courts." *Moline School District No. 40 Board of Education v. Quinn*, 2016 IL 119704, ¶ 28.

¶ 31        In sum, we affirm the trial court's finding that the 911 calls in this case are not exempt from disclosure. We also affirm the trial court's order requiring the Sheriff's Office to provide the 911 calls using audio masking software. However, we reverse the trial court's order requiring the Sheriff's Office to provide transcripts of the 911 recordings.

¶ 32                               III. CONCLUSION

¶ 33        For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Will County.

¶ 34        Affirmed in part and reversed in part.

¶ 35        JUSTICE McDADE, specially concurring in part and dissenting in part:

¶ 36        The issue before us is whether the contents of seven identified 911 calls are exempted from disclosure under the Act. ECW initially filed two requests under the Act, seeking recordings of 911 calls for assistance at the Wesley Rivals Township Park held in the possession of the Sheriff's Office. The request was later modified to seek only the calls presently at issue. After conducting *in camera* inspections of the requested calls, the circuit court found section 7(1)(d)(iv) of the Act did not exempt the calls and ordered the Sheriff's Office to produce the recordings with voice alterations or, if alterations were unduly burdensome or not feasible, to provide ECW with transcripts of the calls. I concur with the author's holding that the recordings are not exempt and that the Sheriff's Office should produce them. However, I write separately to

express (1) my concerns regarding our exercise of jurisdiction in this case and (2) my disagreement with the author's conclusion that transcripts of the 911 calls need not be produced.

¶ 37                                    A. Appellate Jurisdiction

¶ 38        The Sheriff's Office, as appellant, asserted jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Jurisdiction is proper under Rule 301 as a matter of right for "[e]very final judgment of a circuit court in a civil case." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Both parties, however, agree that the order before us was not a final judgment, and the Sheriff's Office has offered no amendment to its original jurisdictional statement to assert and support jurisdiction on any other basis. Acting *sua sponte* and finding that the order is an injunction, a majority of the panel concludes that the order "may be appealed under Rule 307(a)(1)." *Supra* ¶ 17. I am not confident that that conclusion is correct.

¶ 39        As a motion remains pending in the circuit court, I accept, as did the author, the parties' agreed conclusion that the challenged order is not final for purposes of appeal, that the Sheriff's Office has presented an inapplicable and erroneous basis for this court's jurisdiction,[2] and that we do not have jurisdiction on the basis asserted in the jurisdictional statement in the opening brief of the Sheriff's Office. For the reasons that follow, it is not clear to me that we can properly *exercise* jurisdiction to consider the parties' arguments and render a decision in this case.

¶ 40        First, I am doubtful of the propriety of exercising appellate jurisdiction under an unasserted supreme court rule when the Sheriff's Office has neither made a procedurally proper invocation in its jurisdictional statement nor complied with any of the requirements of the rule

_____

[2]The only case I could find in which the supreme court addresses erroneous assertion of a jurisdictional rule is *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 210-11 (1996). However, the discussion of this issue appears to be *dicta* and it relates to the notice of appeal, which the court notes does not require citation to a rule and not, as here, to the jurisdictional statement, which clearly states precisely that requirement.

under which this panel now exercises jurisdiction. Illinois Supreme Court Rule 341(h)(4)(ii) (eff.

Nov. 1, 2017) requires a jurisdictional statement which presents:

> "a brief, but precise statement or explanation under the heading
> 'Jurisdiction' of the basis for appeal including the supreme court rule or
> other law which confers jurisdiction upon the reviewing court; the facts of
> the case which bring it within this rule or other law; and the date that the
> order being appealed was entered and any other facts which are necessary
> to demonstrate that the appeal is timely."

The Sheriff's Office, as appellant, has not provided us with any of the requisite information in

support of interlocutory jurisdiction as of right in this case. Rule 307(a) provides:

> "(a) Orders Appealable; Time. An appeal may be taken to the
> Appellate Court from an interlocutory order of court:
>
> > (1) granting, modifying, refusing, dissolving, or refusing to
> > dissolve or modify an injunction;
>
> > * * *
>
> Except as provided in paragraphs (b) and (d), the appeal must be perfected
> within 30 days from the entry of the interlocutory order by filing a notice
> of appeal *designated 'Notice of Interlocutory Appeal'* conforming
> substantially to the notice of appeal in other cases. A Rule 328 supporting
> record must be filed in the Appellate Court within the same 30 days unless
> the time for filing the Rule 328 supporting record is extended by the
> Appellate Court or any judge thereof." (Emphasis added.) Ill. S. Ct. R.
> 307(a) (eff. Nov. 1, 2017)

- 13 -

The Sheriff's Office's notice of appeal and jurisdictional statement include none of that information. Nor have the parties complied with the expedited briefing schedule for interlocutory appeals set out in Illinois Supreme Court Rule 307(c) (eff. Nov. 1, 2017).

¶ 41    Second, I would note that the procedure the author apparently adopts in this case shifts the burden of asserting and supporting jurisdiction from the appellant, where the supreme court signals in Rules 341(h)(4) and 307(a) it properly belongs, to this appellate panel. Certainly, accepting such a shifting of responsibility is not the usual practice in this court. Typically, if we find jurisdiction has not been properly asserted, we dismiss the appeal; we do not comb the record in search of the information necessary to determine whether jurisdiction can be exercised on another basis.

¶ 42    Third, and finally, supreme court rules establish procedures for carrying out the functions of the courts—presumably for a reason. Regardless of whether we like it or not, our jurisprudence is rife with circumstances where even the most fundamental of constitutional or legislative rights can be waived or forfeited for failure to comply with the appropriate procedures.[3] Finding we cannot exercise jurisdiction in this case because the appellant failed to comply with the procedures necessary to invoke it would merely be another instance, and by far not the most egregious, of procedural default.

¶ 43                    B. Form and Nature of Disclosure

¶ 44    In the instant case, the circuit court ordered the Sheriff's Office to produce the recordings with voice alterations or to provide ECW with transcripts of the calls. The Sheriff's Office

---

[3]For example, in *Shinn v. Ramirez*, 596 U.S. ___, 142 S. Ct. 1718 (2022), the United States Supreme Court held that a death row inmate's demonstrable claim of actual innocence of the crime for which he is scheduled to die cannot be reviewed if the court is technically procedurally barred from considering it.

- 14 -

argues that compliance with either of these options would require creating new documents. The author concludes that the recordings should be produced with voice alterations but that the Sheriff's Office need not produce *transcripts* of the recordings. The dissent would, in essence, amend the Act and hold that 911 calls "(in any form)" are exempt from disclosure under section 7(1)(d)(iv) because (1) the calls do not relate "to governmental affairs," (2) disclosure "would have a chilling effect" on sources of information, and (3) the specificity of the requests before us creates "a greater likelihood" of identification without appropriate judicial review. As I read the statute, the dissent is incorrect.

¶ 45       First, the legislature intended that all public records be accessible unless a statutory exemption applies. *Mancini Law Group, P.C. v. Schaumburg Police Department*, 2021 IL 126675, ¶ 16. The recordings were prepared for and held in the possession of the Sheriff's Office, and neither it nor the dissent contends that the Sheriff's Office is not a public body. Public records include any "recordings" that were "prepared by or for" any public body or are "in the possession of" a public body. 5 ILCS 140/2(c) (West 2018). Second, the public is already aware that 911 recordings are routinely made available to the press and to parties in legal proceedings. Thus, any additional chilling effect resulting from our decision in this case is negligible. Moreover, the legislature is surely aware of any potential chilling effect and it has not removed 911 recordings from the class of public records accessible under the Act, choosing only to exempt communications to law enforcement agencies, not where personal identification is of a "greater likelihood" (as the dissent fears) but rather where it is "unavoidably disclose[d]." *Id.* § 7(1)(d)(iv). Finally, as noted, the circuit court conducted an *in camera* inspection of the recordings to determine whether their disclosure was statutorily barred and concluded " 'the

substantive content of the material does not fall under FOIA exemptions for material that is personal, private, or confidential.' " See *supra* ¶¶ 14, 23.

¶ 46 Therefore, I concur with the author that the statute obligates the Sheriff's Office to produce the recordings with voice alterations. However, I believe that the Act also requires the production of transcripts of the recordings, and I disagree with the author's contrary finding.

¶ 47 The author suggests my position is a result of failing to read and heed the plain and unambiguous language of the statute. It is, however, that language that drives my conclusion. The statute opens by announcing the public policy and governmental obligations as follows: "[I]t is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees." 5 ILCS 140/1 (West 2018). Further, "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible." *Id.* It is not, however, the intent "to create an obligation on the part of any public body to maintain or prepare any public record which was not maintained or prepared by such public body at the time when this Act becomes effective." *Id.* Nonetheless, any restraints on access are limited exceptions to the

> "principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed in accordance with this principle." *Id.*

And finally:

"The General Assembly recognizes that this Act imposes fiscal obligations on public bodies to provide adequate staff and equipment to comply with its requirements. The General Assembly declares that providing records in compliance with the requirements of this Act is a primary duty of public bodies to the people of this State, and this Act should be construed to this end, fiscal obligations notwithstanding." *Id.*

¶ 48 Moving from the general provisions stating the legislative purpose and intent to more specific requirements of the statute, section 1.2 states the Act's "Presumption" as "All records in the custody or possession of a public body are presumed to be open to inspection or copying." *Id.* § 1.2. The Act provides two definitions directly pertinent to this presumption and to the specific issues in this case. Section 2(c) defines "public records" as "all records *** tapes, recordings *** and all other documentary materials pertaining to the transaction of public business, *regardless of physical form or characteristics*, having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." (Emphasis added.) *Id.* § 2(c). This definition makes clear that a public record is not simply a tangible object; it is the content "pertaining to the transaction of public business." *Id.* In section 2(d), "the *reproduction* of any public record by means of any photographic, electronic, mechanical or other process, device or means now known or hereafter developed and available to the public body" is the definition of "copying," *not* of creating a new record. (Emphasis added.) *Id.* § 2(d).

¶ 49 We have already determined that the substance of the recordings is not protected by an exemption. Therefore, under the plain and unambiguous language of the statute, construed to (1) provide full and complete information regarding the affairs of the Sheriff's Office and (2) fulfill the fundamental obligation of the Sheriff's Office to operate openly and provide public

records expediently and efficiently, we *presume* the recordings of the seven 911 calls are "open to inspection and copying." "Copying," as defined in section 2(d), would include reproduction in the form of a transcript. While this could be accomplished by simply making the recording available to ECW so that group can create a transcript, the concern of the Sheriff's Office that some private information could be disclosed would suggest that the office itself should reduce the recordings to transcript form and make the appropriate redactions, "fiscal obligations notwithstanding." *Id.* § 1.

¶ 50    Case law strongly suggests that the distinction between a "public record" and a "document" has not been lost on other courts. In *Family Life League*, the court explained that production of records requiring only the deletion of exempt information does not amount to creating new records. *Family Life League*, 112 Ill. 2d at 457-58. The court expanded the reasoning of *Family Life League* in *Bowie*, 128 Ill. 2d 373, and in *Hamer v. Lentz*, 132 Ill. 2d 49 (1989).

¶ 51    In *Bowie*, the plaintiff sought to obtain demographics and test scores on students from certain years. *Bowie*, 128 Ill. 2d at 376. The demographic request sought race and grade level of the students, but not their names or sex. *Id.* However, the defendants maintained the records with students sorted under a single-digit code capturing a particular student's race and sex. *Id.* at 380. For example, a white male was coded as "1," a white female as "2," and so forth through the spectrum of race and, in some cases, national origin. The defendants argued that to produce the record with only race (without sex) would require recoding the entries to reflect the change, thus requiring the creation of new records. *Id.* at 381. The Illinois Supreme Court disagreed. *Id.* at 382. It reasoned that the disclosure was similar to "only being required to delete the exempt matter." *Id.* "Deleting information from a record does not create a 'new' record, even if all but

- 18 -

one or two items of information have been deleted." *Id.* In *Hamer*, the court held that compiling or scrambling information, although requiring additional steps, does not constitute creating new records. *Hamer*, 132 Ill. 2d at 56-57. In both cases, making the modifications authorized by the court would presumably require producing new paper documents, but the supreme court did not reject that possibility as "creating a new record." Relying in part on *Hamer*, the First District recently explained that "[a] request for a listing or index of a database's contents that seeks information about those contents, as opposed to the contents themselves, requests a new record." *Martinez v. Cook County State's Attorney's Office*, 2018 IL App (1st) 163153, ¶ 30. These precedents strongly support finding that so long as the modification does not involve the creation of new *content* not previously maintained by the agency, it does not create a new record.

¶ 52        The Sheriff's Office contends that creating transcripts requires "discerning the meaning" of the recorded statements. I cannot agree with that argument. Producing transcripts of the 911 recordings only reproduces their exact content. In a courtroom where proceedings are captured on an electronic recording device, the later reduction of the recording to paper does not create a new record, it merely changes the form in which the original record is presented. The recordings would be reduced to paper *verbatim*, requiring—indeed, allowing—neither editing nor discernment of meaning. This task imposes no function on the Sheriff's Office different from that performed by a court reporter. Moreover, unlike the recordings, the transcripts would avoid all concerns about voice recognition and could easily be redacted to exclude any legitimately exempt information without requiring additional technology or significant cost.

¶ 53        The author also notes that the Sheriff's Office "does not maintain transcripts of the 911 calls in the ordinary course of business." *Supra* ¶ 29. It, thus, concludes "that producing a transcript of the recordings constitutes the creation of a new record." *Supra* ¶ 29. I disagree. The

recordings and their contents are accessible to the Sheriff's Office. As previously noted, the *Bowie* court held modifying the existing content of recorded demographic information to satisfy the Act's disclosure requirements did not constitute creating new records. *Bowie*, 128 Ill. 2d at 382. So long as the transcripts contain nothing more than a *verbatim* rendition of the recordings and do not add information not included in the recorded dialogs, no new record would be created. The author's conclusion is tenable only upon reading the Act narrowly and limiting the statutory term "public records" to the forms and formats in which the records are held. The Act does not make such a distinction. Nor does it countenance such a construction of its terms.

¶ 54      For the foregoing reasons, I concur in part, specially concur in part, and respectfully dissent in part.

¶ 55      JUSTICE DAUGHERITY, specially concurring in part and dissenting in part:

¶ 56      I concur that the order appealed from is in the form of an injunction and may be appealed under Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 57      I concur in the conclusion reversing that part of the order requiring the Sheriff's Office to produce transcripts of the 911 calls but do so for the reason I would hold the content of the calls exempt under section 7(1)(d)(iv) of the FOIA. 5 ILCS 140/7(1)(d)(iv) (West 2018).

¶ 58      For the following reasons, I respectfully dissent from the holding of the majority that the records are not exempt.

¶ 59      In this case, the Sheriff's Office claimed the 911 recordings were exempt under section 7(1)(d)(iv) of the FOIA. This section provides that records of the public body are exempt from FOIA requests where it "unavoidably disclose the identity of *** persons who file complaints with or provide information to administrative, investigative, law enforcement." *Id*. I would find

disclosure of the 911 calls (in any form) must be exempt under section 7(1)(d)(iv) and respectfully dissent from the majority holding they are not exempt.

¶ 60        Whether an exemption applies to a request under FOIA is generally a matter of statutory construction and reviewed *de novo*. *Chicago Public Media v. Cook County Office of the President*, 2021 IL App (1st) 200888, ¶ 22; *Hites*, 2018 IL App (2d) 170617, ¶ 50.

¶ 61        Disclosure of communications of private individuals is contrary to the purpose of the FOIA. The purpose of the FOIA is:

> "that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2018).

The key is that individuals are entitled to information regarding the affairs of *governmental* officials. The FOIA "is not intended to cause an unwarranted invasion of personal privacy." *Id.* In other words, the FOIA's purpose is to guarantee "that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." (Emphases in original.) *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 774 (1989).

¶ 62    Here, ECW's request for recordings of the 911 calls only relate to communications made by private citizens. Nothing in the request sought information relating to governmental affairs. Consequently, disclosure of these private communications is contrary to the purpose of the FOIA.

¶ 63    Second, I believe that disclosure of these communications would have a chilling effect on members of the public seeking assistance from law enforcement. Individuals making complaints with or providing information to law enforcement may very well wish to keep those communications private. An individual may fear retaliation when he knows that his communications may be accessed by the public. Even witnesses who make statements about a crime they have observed may be reluctant to have their name associated with the incident. In light of this, I believe that disclosure of 911 calls made by private citizens would have the effect of discouraging the public from providing important information to law enforcement about crimes in their communities.

¶ 64    Moreover, ECW made a request for 911 calls that occurred on a specific date relating to specific incidents at a specific location. These 911 calls could be easily used to discover the identity of the caller. A specific request, like in this case, necessarily limits the universe of potential individuals involved. Accordingly, there is a greater likelihood that the individual will be identified by the content of his or her statement.

¶ 65    Accordingly, I respectfully dissent.